354 So.2d 548 (1978)
STATE of Louisiana
v.
Donald Ray GAINES.
No. 60480.
Supreme Court of Louisiana.
January 30, 1978.
Lawrence R. Anderson, Jr., Anderson & Roberts, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Ralph L. Roy, Marilyn C. Castle, Asst. Dist. Attys., for plaintiff-appellee.
MARCUS, Justice.
Donald Ray Gaines was indicted by the grand jury for the Parish of East Baton Rouge for the first degree murder of Rita Decuir in violation of La.R.S. 14:30. After trial by jury, he was found guilty as charged and was sentenced to death. On *549 appeal, this court reversed defendant's conviction and sentence and remanded the case to the trial court for a new trial.[1] On remand of the case to the trial court, the state was permitted to amend the bill of indictment to charge defendant with second degree murder in violation of La.R.S. 14:30.1. After trial by jury, defendant was found guilty as charged and was sentenced to imprisonment at hard labor for life without eligibility for parole, probation or suspension of sentence for twenty years. On appeal, defendant relies on five assignments of error for reversal of his conviction and sentence.

ASSIGNMENTS OF ERROR NOS. 1, 2 AND 3
Defendant contends the trial judge erred in denying his motion to suppress his confession and in permitting testimony concerning it at trial. He argues that, because of his youth (age 17), his limited intellectual ability, the prolonged interrogation and the use of threats and coercion, his confession was not freely and voluntarily made (Assignments of Error Nos. 1 and 2). Defendant also contends the trial judge erred in allowing in evidence a pistol and various pieces of clothing which were procured as a result of his allegedly involuntary confession (Assignment of Error No. 3).
During trial, defendant made an oral motion to suppress his inculpatory statement. Since the trial judge in this case was the same judge who ruled on the motion to suppress and presided over the earlier trial, it was stipulated by and between the prosecutor and defense counsel that the evidence adduced at the previous suppression hearing as well as the evidence at the earlier trial relative to the free and voluntary nature of the confession and the reports of Drs. F. A. Silva and Hypolite T. Landry, who had examined defendant prior to his first trial to determine his mental capacity to proceed, could be considered by the trial judge in determining the admissibility of the statement in the present prosecution.
At the earlier suppression hearing, Warren J. Hebert, a member of the district attorney's office, testified that he was present at the time of defendant's arrest for a different offense at his home. The arrest occurred at about 4:00 a.m. He accompanied defendant to the police station in a police vehicle and advised him of his Miranda rights en route to the station. Upon arrival at the station, defendant was questioned by Detective Jerry Moran and Sgt. H. P. Lambert with respect to his participation in another crime. At approximately 6:30 a.m., Hebert interrogated defendant concerning the instant crime; defendant stated that he knew one of the individuals involved (Perkins) but denied any personal involvement in the crime. Hebert testified that later that morning (9:00 a.m.), he returned to the station where he remained until about 12:30 p.m. He observed defendant eating a meal around lunch time. Handcuffs had been removed from defendant upon his arrival at the station. Defendant was still in the clothes he was wearing at the time of his arrest. At approximately 6:30 p.m., after again informing defendant of his Miranda rights, Hebert stated that he questioned defendant for a second time; at this time defendant confessed his participation with Steve Perkins in the instant crime. The interrogation session lasted about thirty minutes. Hebert testified that he neither threatened defendant or promised him anything to induce him to confess. Specifically, he denied observing any physical abuse of defendant by police officers. Moreover, he denied observing Ossie Brown (district attorney) interview defendant. As a result of information disclosed by defendant, Hebert procured four search warrants; execution of these warrants resulted in the recovery of a pistol used in the commission of the crime and the clothing worn by the perpetrators.
Defendant also testified at the previous suppression hearing. He denied that Hebert was present either at the time of his arrest at his home or en route to the police station. He stated that he first saw Hebert *550 upon his arrival at the police station. Defendant related that between six and seven in the morning, Hebert and an officer brought him to Ossie Brown for questioning; Perkins, defendant's co-participant in the crime, was present at this interview. He testified that upon his refusal to talk, Brown ordered him placed in "isolation" where he remained until he was moved to the parish prison which, according to his subsequent testimony, occurred around noon the following day. Defendant further testified that at approximately noon on the day of his arrest, he was collared and shoved about by two police officers; however, he denied that he was beaten. He claimed that he immediately reported this incident to Ossie Brown who took no corrective action. Defendant also asserted that he was deprived of food and water during this period. He related that upon his arrival at parish prison he called his mother, Marjorie Gaines, and told her that he was being shoved around by the police in an attempt to induce him to confess to the crime. He admitted that he was advised of his rights when arrested at home but denied that he was further advised of his rights at any subsequent time. Defendant also denied that he ever spoke to Hebert or even gave a statement to anyone relating to the crime in question.
Defendant also called as witnesses David Miller, Marjorie Gaines and Steve Perkins. David Miller, a member of the district attorney's office, testified that he questioned defendant on the morning of his arrest; defendant did not indicate his involvement in the crime. Marjorie Gaines testified that defendant called her and complained of being beaten. Steve Perkins stated that he was present when Brown had defendant placed in the "hole" upon his refusal to confess.
At the prior trial, Detective Jerry Moran testified that he was present when defendant confessed his participation in the instant crime after having been fully advised of his rights. Warren Hebert was present at the time. He further stated that defendant's confession was given at about 6:30 p.m. on the night of his arrest and the session lasted about thirty minutes.
According to the reports of Drs. Silva and Landry who examined defendant in connection with his prior trial, defendant possessed limited intellectual ability and had a history of maladjustment; however, he was found capable of understanding the charge against him and assisting in his own defense.
After reviewing the evidence introduced by stipulation in connection with defendant's motion to suppress, the trial judge denied the motion and permitted introduction of the inculpatory statement in evidence. The pistol and clothing seized pursuant to the search warrants issued based on information disclosed by defendant's statement were likewise admitted in evidence.
Before a confession may be introduced in evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, inducements or promises. La.R.S. 15:451; La.Code Crim.P. art. 703(C). It must also be established that an accused who makes a confession during custodial interrogation was first advised of his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A confession need not be the spontaneous act of the accused and may be obtained by means of questions and answers. La.R.S. 15:453. The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless they are not supported by the evidence. State v. Hutto, 349 So.2d 318 (La.1977); State v. Adams, 347 So.2d 195 (La.1977); State v. Ross, 343 So.2d 722 (La.1977).
At the outset, it should be observed that defendant denied ever giving a statement to Warren Hebert. He even denied making a statement to anyone relating to the crime. This testimony was in direct conflict with *551 that of Hebert and Detective Moran. Defendant also testified that Hebert and an officer brought him to Ossie Brown who, upon his refusal to talk, ordered him placed in isolation. However, Hebert testified that he had no knowledge of an interview between defendant and Brown. Moreover, defendant's assertion that he remained in solitary confinement from the morning of his arrest until noon of the following day when he was transported to the parish prison was contradicted by Hebert, Miller and Moran who testified that they observed and questioned defendant on the morning and evening of his arrest.
Likewise, defendant's claim that he was collared and shoved about by two unidentified police officers at approximately noon on the day of his arrest was uncorroborated and contradicted by the evidence. Defendant admitted that he was not beaten by the officers. Hebert specifically denied that defendant was collared, slapped or shoved by police officers. He further testified that he observed defendant eating his lunch at the time defendant claimed to have been shoved about by the officers. Moreover, although defendant testified that he immediately reported the incident to Ossie Brown, he did not attempt to corroborate his assertion by calling Brown to testify to this fact on his behalf.
As set forth above, defendant's claim of threats and coercion was directly contradicted by the evidence. Moreover, there was no evidence of prolonged interrogation; rather, the evidence was to the contrary. Finally, despite defendant's youth and limited intellectual ability, the record clearly reflects that he was capable of understanding his Miranda rights, knowingly and intelligently waiving these rights, and making a free and voluntary confession.
We are convinced, as was the trial judge, that the state satisfied its burden of affirmatively proving that the confession was freely and voluntarily made after defendant had been advised of his Miranda rights. Accordingly, the trial judge did not err in denying defendant's motion to suppress his confession and in permitting it and the evidence procured as a result thereof to be introduced into evidence.
Assignments of Error Nos. 1, 2 and 3 are without merit.

ASSIGNMENT OF ERROR NO. 4
Defendant contends the trial judge erred in refusing to give a requested special charge to the jury. The requested special charge would have instructed the jury in detail on the weight to be given by it to an "admission" and "confession."
La.Code Crim.P. art. 807 provides that the trial judge need not give a requested special charge if it is included in the general charge.
The trial judge's general charge included an instruction that, in any criminal case, where the state introduces into evidence what purports to be an admission, confession or statement made by the defendant, the jury should examine all of the circumstances surrounding the giving of the statement in order to properly determine the weight to be given to it.
We consider that the requested special charge was adequately covered by the general charge given by the court. Accordingly, the trial judge did not err in refusing to give the requested special charge.
Assignment of Error No. 4 is without merit.

ASSIGNMENT OF ERROR NO. 5
Defendant contends the trial judge's general charge to the jury failed to properly include in an organized manner instructions on the presumption of innocence, burden of proof and reasonable doubt.
La.Code Crim.P. art. 804 provides:
A. In all cases the court shall charge the jury that:
(1) A person accused of crime is presumed by law to be innocent until each element of the crime, necessary to constitute his guilt, is proven beyond a reasonable doubt;
(2) It is the duty of the jury, in considering the evidence and in applying to *552 that evidence the law as given by the court, to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence in the case; and
(3) It is the duty of the jury if not convinced of the guilt of a defendant beyond a reasonable doubt, to find him not guilty.
The court may, but is not required to, define `the presumption of innocence' or `reasonable doubt' or give any other or further charge upon the same than that contained in this article.
B. When there are several grades of an offense contained in a single count, the court shall charge the jury as to each grade of which the defendant could be found guilty. The court shall in that case also charge the jury that if it has a reasonable doubt as to any or all grades of the offense charged it shall find the defendant not guilty of that grade, or all grades of the offense, as the case may be.
A review of the general charge given by the trial judge to the jury in this case demonstrates that the general charge strictly complied with the requirements of the above provision and was presented in an organized manner. Moreover, although the trial judge is not required by the statute to define "reasonable doubt" in his charge, the trial judge did in fact include such an instruction in his general charge to the jury. Accordingly, we find no substance in defendant's complaint.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[1] 340 So.2d 1294 (La.1976).