383 So.2d 369 (1980)
STATE of Louisiana
v.
Robert Wayne WILLIAMS.
No. 65563.
Supreme Court of Louisiana.
April 7, 1980.
Rehearing Denied May 19, 1980.
*370 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., John W. Sinquefield, Asst. Dist. Atty., for plaintiff-appellee.
Marion Weimer, Wyatt & Weimer, Stephen E. Covell, Covell & Covell, Baton Rouge, for defendant-appellant.
*371 BLANCHE, Justice.[*]
The defendant, Robert Wayne Williams, was charged with first degree murder in violation of La.R.S. 14:30. He was found guilty and sentenced to death. On appeal, the defendant urges seven assignments of error.
During the trial, the state adduced the following facts: On January 5, 1979, the defendant and Ralph Holmes entered the A & P Supermarket located at 3525 Perkins Road in Baton Rouge. Both men placed ski masks over their faces and Williams pulled out a 12-gauge sawed-off shotgun. They then approached the security guard, Willie Kelly, age 67, who was bagging groceries. Ralph Holmes tried to remove Kelly's pistol from his holster. As Kelly made a move with his hand toward his pistol, Williams yelled "Don't try it", and immediately shot Kelly in the face at point blank range. Williams and Holmes then proceeded to complete the robbery. During this process, Holmes pistol-whipped one of the customers, and Williams accidentally shot two people in their feet. The police received a telephone call from an informant implicating Holmes, Williams and Williams' wife. Following their arrest, both Williams and his wife gave confessions which implicated themselves in the crime.

Assignment of Error Number 1
By this assignment, the defendant contends that the trial court erred in denying the defendant's challenge for cause of the prospective juror Gladys Almand. The defendant argues that Mrs. Almand was a hardship case and should have been excluded from the jury. The voir dire examination revealed that Mrs. Almand was divorced with two children, ages 14 and 17, living at home. Both children attended school and Mrs. Almand indicated that she had had small problems with the younger child at school. The defendant argues that the testimony of Mrs. Almand indicated that she was preoccupied with her children's welfare and, as a result, could not devote her full attention to the trial. La.C.Cr.P. art. 783 provides in part as follows:
"B. If jury service, whether criminal or civil, would result in undue hardship or extreme inconvenience, the district court may excuse a person from such service either prior to or after his selection for the general venire, jury pool, or jury wheel. The court may take such action on its own initiative or on recommendation of an official or employee designated by the court."
In ruling on such challenges, the trial court is granted broad discretion, and its ruling will not be disturbed on appeal absent a showing of an abuse of that discretion. See State v. Drew, 360 So.2d 500 (La.1978); State v. Monroe, 366 So.2d 1345 (La.1978). In the instant case, a review of the record of the voir dire examination does not show an abuse of that discretion. Although Mrs. Almand did have two teenaged children, nothing in her testimony indicated the type of circumstances which would render sitting on a sequestered jury a particular hardship.
For these reasons, the assignment is without merit.

Assignments of Error Numbers 4 and 5
By these assignments, the defendant argues that the trial court erred in failing to suppress his confession, and in allowing the introduction of the taped confession and signed waiver of rights form at trial.
The defendant asserts that his confession was not freely and voluntarily given. He does not claim that any overt or physical coercion or intimidation was involved; rather, he maintains that the confession was obtained in a psychologically coercive atmosphere. The defendant claims that the police officers intentionally left the door open to his wife's interrogation room so that he could hear their questioning of her while he waited in the next room. Thus, he maintains that he was psychologically *372 coerced into confessing because he could hear his wife crying.
La.R.S. 15:451 provides as follows:
"Before what purposes [purports] to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises."
The question of voluntariness of a confession, including a determination of the defendant's psychological state of mind, will be answered from the facts and circumstances of each case. Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Thus, the admissibility of a confession is, in the first instance, a question for the trial judge. His conclusions on the credibility and weight of the testimony will not be overturned on appeal unless they are not supported by the evidence. State v. Gaines, 354 So.2d 548 (La.1978).
Although the defendant claims that his confession was induced by his emotional disturbance over his wife's interrogation, the evidence does not support such a conclusion. The evidence reveals that the defendant and his wife were arrested at 10:30 a. m., at which time he was read his Miranda rights. Subsequently, the defendant gave a taped confession between 4:30 and 7:30. The defendant testified that he was upset during his interrogation, but there is no other indication that his emotional distress was so severe that he was unable to voluntarily give a statement. The police officers testified that the door to the interrogation room of defendant's wife was closed, and that it was unlikely that the defendant heard much of what went on. Further, it should be noted that the defendant's confession was essentially exculpatory in nature since he claimed that the shotgun went off accidentally.
For these reasons, we conclude that the trial court's ruling as to the voluntariness of the confession was supported by the evidence. The assignments are without merit.

Assignment of Error Number 3
In this assignment, defendant contends that the trial judge erred in allowing the introduction of evidence of the armed robbery. The defendant argues that, as he was charged with first degree murder, the evidence of the armed robbery served no probative purpose and was extremely prejudicial since first degree murder requires proof of specific intent to kill or cause great bodily harm, and proof of the armed robbery does not contribute to the proof of specific intent.
We find that the evidence was admissible as part of the res gestae. La. R.S. 15:448 provides:
"To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction."
Thus, evidence that forms part of the res gestae is always admissible. Here, there is no doubt that the armed robbery was an immediate concomitant of the murder and formed, in conjunction with it, one continuous transaction. See State v. Matthews, 354 So.2d 552 (La.1978); State v. Williams, 375 So.2d 364 (La.1979); State v. Donahue, 355 So.2d 247 (La.1978).
For these reasons, we find the assignment is without merit.

Assignment of Error Number 8
By this assignment, the defendant contends that the trial court erred in imposing the death sentence. He argues that the imposition of the death penalty violates both the eighth amendment to the United States Constitution and art. 1, § 20 of the Louisiana Constitution.
The United States Supreme Court has indicated that the death sentence, when imposed on a subject convicted of murder, is not necessarily unconstitutional. See Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Jurek v. Texas, 428 *373 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). Similarly, this Court has recognized in State v. Myles (La.1979) (No. 63,567) (rehearing granted), that art. 1, § 20 does not prohibit the imposition of the death penalty in appropriate cases.
For these reasons, we conclude that the defendant's argument that the death penalty is, per se, unconstitutional is without merit.

Assignment of Error Number 7
The defendant claims that the court erred in denying his motion in arrest of judgment. The defendant maintains that La.C.Cr.P. art. 905 is unconstitutional in that it does not give the jury an acceptable constitutional standard with which to make the determination that the death penalty should be imposed.
Our capital sentence law, following the decision in Roberts v. La., 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), was modeled upon the Georgia statute which was upheld by the U.S. Supreme Court in Gregg v. Georgia, supra. In State v. Martin, 376 So.2d 300 (La.1979), we found that our present sentencing scheme does provide adequate safeguards against the arbitrary imposition of the death penalty.
For these reasons, we find the defendant's assignment without merit.

Assignment of Error Number 6
By this assignment, the defendant argues that the trial court erred in denying his motion for a new trial. The defendant maintains that a new trial should have been granted because the state failed to prove an essential element of the crime, i. e. specific intent to kill or to inflict great bodily harm.
The Louisiana Constitution limits this Court's review of criminal convictions on appeal to questions of law. La.Const. art. 5, § 5(C). Thus, only when there is no evidence of an essential element of the crime charged can this Court's appellate jurisdiction be invoked to reverse a conviction on an evidentiary review. State v. Valentine, 364 So.2d 595 (La.1978); State v. Tucker, 354 So.2d 521 (La.1978); State v. Main Motors, Inc., 383 So.2d 327 (La.1979).
La.R.S. 14:10 defines specific intent as follows:
"(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."
La.R.S. 15:445 provides in part as follows:
"In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction."
Specific intent is a state of mind and as such, it need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. Thus, charging the victim in a threatening manner and trying to get at him with a knife over a bar as been found to be evidence of specific intent to kill. State v. Garner, 241 La. 275, 128 So.2d 655 (1961). Likewise, the pointing of a gun at the victim as it was fired has been ruled evidence of a specific intent to kill. State v. Procell, 365 So.2d 484 (La.1978).
The defendant herein armed himself with a sawed-off shotgun. He and his partner entered the A & P Supermarket and proceeded immediately toward Willie Kelly. His partner tried to disarm Kelly. At Kelly's slightest movement, the defendant levelled the sawed-off shotgun within two feet of the victim's face, screamed "Don't try it", and immediately shot Kelly's face off at point blank range.
We find that there is ample evidence in the record to support the jury's conclusion that there was specific intent to kill or to inflict great bodily harm.[**] For these reasons, the assignment is without merit.

*374 Sentence Review

Rule 905.9.1 requires a mandatory review by this Court of any case wherein the death penalty was imposed to determine whether it was excessive. The rule sets forth three criteria of review as follows:

"Section 1. Review Guidelines. Every sentence of death shall be reviewed by this court to determine if it is excessive. In determining whether the sentence is excessive the court shall determine: (a) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors, and (b) whether the evidence supports the jury's finding of a statutory aggravating circumstance, and (c) whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."
Our review of the entire record does not reveal any factors which would indicate that sentence was imposed under the influence of passion, prejudice or any other arbitrary factors.
The jury found the following three aggravating circumstances:
"(a) the offender was engaged in the perpetration or attempted perpetration of aggravated rape, aggravated kidnapping, aggravated burglary, aggravated arson, aggravated escape, armed robbery, or simple robbery; . . . (d) the offender knowingly created a risk of death or great bodily harm to more than one person;. . . (g) the offense was committed in an especially heinous, atrocious, or cruel manner; . . ."
The evidence clearly supports the conclusion that the victim was murdered in the course of an armed robbery. The state witnesses' testimony is unrefuted that the two assailants removed money from the store's cash registers and safe while holding various people at gunpoint.
The jury having properly concluded that at least one statutory aggravating circumstance existed, it was within their power to return a recommendation of death without finding other aggravating circumstances. Thus, further inquiry as to whether these other aggravating circumstances were properly found to exist is merely cumulative and unnecessary to support the jury's verdict.
In accordance with Rule 905.9.1, § 3, the trial court completed a Uniform Capital Sentence Report. We have reviewed this report in conjunction with the post-sentencing report. The defendant is a 27-year-old black male, married with one infant daughter. The evidence at trial shows that his wife drove the getaway car and her uncle, Ralph Holmes, was the defendant's other accomplice. The defendant completed school through the tenth grade and psychiatric evaluation revealed that the defendant could distinguish between right and wrong and showed no behavioral disorders.[1] The defendant does not have a significant prior criminal record.[2] The defendant claims that he has been injecting preludin for six years and committed the robbery in order to obtain drugs. At the sentencing hearing, the defendant argued three statutory mitigating circumstances.
The defendant argues that his lack of a significant prior criminal record and his drug-induced mental disturbance were significant mitigating circumstances which required the imposition of a life sentence. We have previously affirmed death sentences imposed despite the absence of any significant prior criminal record. See State v. Williams, (La.1980) (No. 64,987); State v. Martin, 376 So.2d 300 (La.1979). Further, this Court has affirmed a sentence of death where the defendant argued voluntary intoxication as a mitigating *375 circumstance. State v. Prejean, 379 So.2d 240 (La.1979). Thus, we find that the arguable presence of these mitigating circumstances does not necessarily render this sentence disproportionate.
In conformity with § 4(b), the district attorney has compiled a sentence memoranda which contains a synopsis of each first degree murder case in the district since January 1, 1976.
The sentence review memoranda shows that there have been 28 murder prosecutions in East Baton Rouge Parish with eleven resulting in first degree murder convictions. Of these eleven, only three of the defendants were sentenced to death. These three cases are strikingly similar in that all three defendants were the actual killers and the crimes all arose during the perpetration of armed robberies. See State v. Williams, 383 So.2d 369 (La.1980) (No. 65,563); State v. Clark, No. 66,573, appeal pending.[3]
Thus, a review of the sentences imposed in the same parish shows that in the cases most similar to the defendant's, the death penalty was imposed. Our review also shows a dissimilarity between the defendant's case and the other first degree murder convictions in that arguably, there are no aggravating circumstances[4] or there were present mitigating circumstances which justified the jury's recommendation of life imprisonment.[5]
In light of the above considerations, we are unable to conclude that the sentence imposed here is disproportionate to that imposed in similar cases.
For the above assigned reasons, the sentence and conviction of the defendant are affirmed.
AFFIRMED.
DIXON, C. J., concurs, disagreeing with propositions stated in Assignment # 6.
DENNIS, J., concurs in part and dissents in part for reasons to be assigned.
DENNIS, Justice, concurring in part and dissenting in part.
I concur in the majority's affirmance of the defendant's conviction, but I respectfully dissent from its refusal to set aside the death penalty and order a new capital sentence hearing. The jury found three aggravating circumstances, namely, that the murder occurred during the commission of an armed robbery, that the defendant knowingly created a risk of death or great bodily harm to more than one person, and that the murder was committed in an especially heinous, atrocious or cruel manner. See La.C.C.P. art. 905.4(a)(d) and (g). The record will not support beyond a reasonable doubt the findings that the defendant knowingly risked the lives of more than one person, nor that the murder was especially heinous. Our constitutional mandate to review death sentences with the utmost care requires that we remand this case for a new sentencing hearing to permit the jury to make its grave decision without consideration of erroneous and prejudicial findings of aggravating circumstances. I cannot say beyond a reasonable doubt that the jury, told that it may not consider this murder especially heinous or that it may not find that more than one life was knowingly risked, would persist in its recommendation of death.
Because of the qualitative difference between the death penalty and all others under the criminal law, a correspondingly greater need for reliability exists in the determination that a defendant must die *376 for his crimes. Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977).
The Due Process Clause and Article 1, § 2 of the Louisiana Constitution protect every accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); State v. Searle, 339 So.2d 1194 (La.1976). In view of our duty to ensure a greater degree of reliability when the death sentence is imposed, it is clear that a jury finding of an aggravating circumstance, as a matter of constitutional and statutory law, see La.C.Cr.P. art. 905.3, must be founded at least upon proof beyond a reasonable doubt. Lockett v. Ohio, supra. The critical inquiry of this Court in its review of a capital sentence must be whether the evidence in the record can reasonably support a finding of an aggravating circumstance beyond a reasonable doubt. Jackson v. Virginia, supra. Any error in the jury's finding of aggravating circumstances must be scrutinized according to whether such error introduced an element of arbitrariness and capriciousness into the jury recommendation of death, which renders the death sentence constitutionally impermissible. See Lockett v. Ohio, supra; Gardner v. Florida, supra; Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); State v. English, 367 So.2d 815 (La.1979); State v. Sonnier, 379 So.2d 1336, 1371 (La. 1979) (separate opinion). We cannot approve a death penalty in the face of an error in the capital sentencing hearing unless we are convinced beyond a reasonable doubt that the mistake was harmless to the jury's recommendation. See Lockett v. Ohio, supra; Gardner v. Florida, supra; Proffitt v. Florida, supra; see also, Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710 (1967).
The jury here clearly erred in finding that the murder was especially heinous and that the defendant knowingly created a risk of death or great bodily harm to more than one person. The proper standard for a finding of an especially cruel or heinous murder incorporates the notion that the murder must have been inflicted through torture or pitiless infliction of unnecessary pain on the victim. State v. English, supra, at 823. Such a limitation protects the statute defining this aggravating circumstance from constitutional attacks for overbreadth and vagueness. See Proffitt v. Florida, supra. Here, the victim was shot almost immediately after the defendant raised his gun; he died instantly. The defendant did not torture or inflict unnecessary pain upon the security guard. The jury's finding of this aggravating circumstance cannot be supported by the record beyond a reasonable doubt.
As to the jury finding that the defendant knowingly created a risk of death or great bodily harm to more than one person, our analysis must focus on whether the defendant contemplated and caused the knowing creation of great risk of death or great bodily harm to more than one person. See State v. English, supra, 367 So.2d at 824; see also Proffitt v. Florida, supra. The defendant shot the security guard at point-blank range, and although customers stood nearby, there is no evidence that a danger existed to these other patrons. In fact, they apparently were further removed from the victim than Ralph Holmes, the defendant's cohort, who was unstrapping the guard's pistol at the time of the shooting. It is clear that the defendant intended to kill only the guard and, considering the point-blank range, it cannot be found beyond a reasonable doubt that the offender knowingly created a risk of death or great bodily harm to more than one person. Unless this statutory aggravating circumstance is strictly construed, the statute is subject to arbitrary interpretations inconsistent with the constitution. State v. English, supra; Proffitt v. Florida, supra.
The majority errs in basing its opinion on the premise that the death penalty must be upheld if the jury correctly finds "one or more" aggravating circumstances to exist. Apparently the majority sees the role of this Court in capital sentence review as a *377 limited one of determining if there is at least one correctly found aggravating circumstance. This view is clearly in conflict with the Supreme Court's decisions in Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) and Jackson v. Virginia, supra, and with our constitutional duties, Article 1, § 20 of the Louisiana Constitution, and our statutory responsibilities, La.C.Cr.P. art. 905, et seq. Under these principles, this Court is charged with reviewing the jury's recommendation to determine if the sentence was influenced by passion, prejudice or any arbitrary factor. The presence of two erroneous findings of aggravating circumstances, especially since these factors relate to cruelty and the creation of a risk of death to more than one person, clearly introduces room for a jury to act through passion, prejudice, or arbitrariness.
I respectfully submit that, in order to impose a constitutional death sentence, this case should be remanded for a new sentencing hearing. In the proceeding on remand the jury should be permitted to weigh the single aggravating circumstance of which there was a reasonable evidentiary basis, i. e., the offender's engagement in armed robbery, against the mitigating circumstances, e. g., Williams' lack of a serious criminal record and his drug addiction, in determining whether the death sentence is appropriate in this case.
NOTES
[*] Chief Judge PAUL B. LANDRY, Jr., retired, participated in this decision as Associate Justice Ad Hoc.
[**] This factual finding supports defendant's conviction irrespective of the standard of review. See Jackson v. Virginia, 439 U.S. 1064, 99 S.Ct. 828, 59 L.Ed.2d 29 (1979).
[1] In his sentence report, the trial judge noted that at the time of the defendant's indictment, he outwardly exhibited possible mental problems. Both doctors suspected the defendant was faking mental illness, especially since his behavior was normal when he was not being observed. After the sanity hearing, the defendant did not again raise the issue of sanity.
[2] The defendant was previously convicted of resisting arrest and of misdemeanor theft.
[3] Although both Michael Glover and Ralph Holmes, Jr. were convicted of first degree murder, they were not sentenced to death. However, both participated as principals, as distinguished from being the actual perpetrator, in the respective crimes committed with Colin Clark and Robert Williams.
[4] State v. Collins, 378 So.2d 928 (La.1980); State v. Allen, 380 So.2d 28 (La.1980); State v. Foote, 379 So.2d 1058 (La.1980); State v. Spooner, 368 So.2d 1086 (La.1979).
[5] State v. Edwards, 375 So.2d 1365 (La.1979); State v. Howard, 377 So.2d 1226 (La.1980); State v. Glover, 381 So.2d 832 (La.1980); State v. Holmes, No. 65,846 (appeal pending).