387 So.2d 1124 (1980)
STATE of Louisiana
v.
Colin CLARK.
No. 66573.
Supreme Court of Louisiana.
June 23, 1980.
Dissenting Opinion July 30, 1980.
Rehearing Denied September 12, 1980.
Concurring in Part and Dissenting Opinion November 4, 1980.
*1127 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Kay Kirkpatrick, Asst. Dist. Atty., for plaintiff-appellee.
M. Michelle Fournet, Asst. Public Defender, J. J. McKenzie, Baton Rouge, for defendant-appellant.
Concurring in Part and Dissenting Opinion November 4, 1980. See 389 So.2d 1335.
MARCUS, Justice.
Colin Clark was indicted by the grand jury for the first degree murder of Fred Schmidt on July 15, 1978, in violation of La.R.S. 14:30. After trial by jury, defendant was found guilty as charged. A sentencing hearing was conducted before the same jury that determined the issue of guilt. The matter was submitted on the evidence of the trial on the issue of guilt without introduction of other evidence. The jury unanimously recommended that a sentence of death be imposed on defendant. The trial judge sentenced defendant to death in accordance with the recommendation of the jury. On appeal, defendant relies on twenty-seven assignments of error for reversal of his conviction and sentence.[1]

FACTS
On Saturday, July 15, 1978, at 1:59 a. m., a burglar alarm was set off at the Red Lobster Inn in Baton Rouge, Louisiana. Police arrived at the Inn at 2:05 a. m. and upon entering found the body of Fred *1128 Schmidt, the assistant manager of the restaurant. Schmidt had been stabbed approximately thirty to thirty-five times and had been shot once. A pathologist testified that the knife wounds were delivered before the shooting, which produced instant death. Two of the knife wounds would otherwise have been fatal. Found next to the body was a butcher knife that according to the pathologist could have been the knife used. A ballistics expert testified that the bullet found was fired from a .38 caliber revolver. Also found at the scene were spots of blood of the same type as that of defendant, two band-aid wrappers and an entry in the manager's log reading "Colin walked out, S.O.B." A metal strongbox, approximately $1,800.00 and two bottles of Chivas Regal scotch were missing.
Defendant had been employed as a waiter at the Red Lobster and had quit earlier that evening. A waitress at the restaurant testified that defendant and the victim had an argument that evening. Three witnesses testified they saw defendant's car at the restaurant or several blocks away driving toward the restaurant immediately prior to the crime. Two of these witnesses also testified they saw two persons in the car. One witness testified a friend with her shouted, "Hey, Colin," when the car passed and the passenger in the car stuck his arm out of the window and waved.
Two of defendant's roommates, Linda Pittman and Rod Reid, testified they were in bed in their room at 4:00 or 4:30 a. m. when defendant and their other roommate, Michael Glover, returned home. Defendant shut the door to Pittman and Reid's room, telling them he had a couple of lady friends with him. When they heard unusual shuffling noises, Pittman and Reid left their room to investigate. Defendant and Glover were packing their belongings. Defendant's hand was badly cut and, according to Pittman, had band-aids on it. Pittman noticed an unusually large number of bills in Glover's wallet. At about 5:30 a. m., after consuming a bottle of Chivas Regal scotch they had brought in with them, defendant, and Glover departed, telling Pittman and Reid that if anyone asked, they should say that defendant and Glover left for San Francisco, California, two days before. After they left, Pittman and Reid noticed that a metal strongbox they had seen during the packing was gone. Furthermore, Pittman and Reid both testified defendant owned a knife like that found at the scene of the crime and Glover owned a .38 caliber revolver, the same type of gun as that used in the murder. Glover was arrested in New York City; defendant was arrested in San Diego, California; his car was found in Tallahassee, Florida.

ASSIGNMENT OF ERROR NO. 5
Defendant contends the trial judge erred in denying his objection to the one thousand dollar limitation placed on the amount he was allowed to expend in his defense. He argues that, due to this limitation, he was unable to hire an investigator and to locate and procure for trial a certain material witness.
On August 3, 1979 (Friday), defendant filed a motion for a continuance due to the "unavailability of necessary out-of-state witnesses." Trial was set for Monday, August 6, 1979. Defendant had been arraigned and counsel appointed some six months earlier. Attached to the motion was an affidavit of counsel which stated that, despite due diligence and effort of counsel, it had only recently come to his attention that the testimony of Dr. Francis H. Hoffman of Mobile, Alabama, was required. The affidavit continued by stating that Dr. Hoffman, a psychiatrist, "would possibly be a necessary defense witness" and that it was "believed by the defense" that he would testify that the crime charged was outside of the personality and psychological makeup of defendant. Counsel further stated that he learned of Dr. Hoffman approximately two weeks before trial.
Immediately prior to the commencement of trial, defense counsel admitted that he had not contacted Dr. Hoffman about his possible testimony. The testimony of another doctor, whose absence was also alleged *1129 as a basis for the continuance, was stipulated by agreement of counsel. The trial judge denied the motion for a continuance. Prior to the calling of the first witness, defendant lodged an objection to the dollar limitation placed on the amount he was allowed to expend in his defense. The trial judge noted his objection.
La. Code Crim.P. art. 738 provides that each defendant shall be allowed to summon twelve witnesses at the expense of the parish at the trial of a felony case. If a defendant is indigent and unable to pay for witnesses desired by him in addition to those summoned at the expense of the parish, art. 739 provides for a method by which he may apply to the court for the additional witnesses.
In the instant case, defendant called only one witness at trial. Dr. Hoffman could have been subpoenaed at the expense of the parish. Despite the fact that Dr. Hoffman's whereabouts was known to defendant at least two weeks prior to trial, no attempt was made to subpoena him.
In State v. Madison, 345 So.2d 485 (La.1977), we stated that when an indigent defendant shows that his attorney is unable to obtain existing evidence crucial to the defense, the means to obtain it should be provided for him, and if the indigent defender system cannot defray the expense, the state ought to supply the funds. There, however, we held that defendant did not make a sufficient showing of need to justify the procurement of an investigator. Similarly, in the instant case we find defendant made an insufficient showing that the dollar limitation placed on his defense and the lack of a private investigator prevented him from obtaining existing evidence crucial to his defense. The trial judge did not err in denying defendant's objection.
Assignment of Error No. 5 is without merit.

ASSIGNMENT OF ERROR NO. 13
Defendant contends the trial judge erred in charging the jury with the law of conspiracy, over defendant's objection, when defendant had not been charged with the crime of conspiracy.
La.R.S. 14:26 defines the offenses of conspiracy as follows:
Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.
If the intended basic crime has been consummated, the conspirators may be tried for either the conspiracy or the completed offense, and a conviction for one shall not bar prosecution for the other.
A criminal conspiracy to commit any given offense is an inchoate crime, separate and distinct from the completed criminal conduct. However, when a defendant is on trial for the completed offense and the facts of the case establish the existence of a conspiracy, reference to the law of conspiracy may be relevant and permissible to allow the state to take advantage of the evidentiary rules found in La.R.S. 15:455, which provides:
Each coconspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. But to have this effect a prima facie case of conspiracy must have been established.
Therefore, if the state did in fact establish a prima facie case of conspiracy, the trial judge's charge to the jury as to the law of conspiracy was proper as the law applicable to the case. La. Code Crim.P. art. 802; State v. Matthews, 354 So.2d 552 (La.1978); State v. Sheppard, 350 So.2d 615 (La.1977); State v. Bennett, 341 So.2d 847 (La.1976); State v. Kaufman, 331 So.2d 16 (La.), cert. *1130 denied, 429 U.S. 981, 97 S.Ct. 495, 50 L.Ed.2d 591 (1976); State v. Carter, 326 So.2d 848 (La.1975); State v. Brown, 326 So.2d 839 (La.1975), cert. denied, 429 U.S. 918, 97 S.Ct. 310, 50 L.Ed.2d 284 (1976).
The type of proof necessary to establish a conspiracy may be direct or circumstantial evidence. State v. Sheppard, supra; State v. Kaufman, supra. In State v. Carter, supra, we held that, when the only showing of conspiracy is that two people committed a crime, and there is no showing that defendant either committed or conspired to commit the criminal act, no prima facie case of conspiracy has been established. We further held that the fact, alone, that two or more have committed the crime charged is not sufficient to establish a prima facie case of conspiracy.
In the instant case, however, we find that there was a prima facie showing that two persons agreed or combined for the specific purpose of committing a crime. Two witnesses testified that defendant's car was in the vicinity of the crime just before its occurrence with two passengers sitting in it. One of those witnesses testified that a friend with her at the time identified one of the passengers as defendant. At the scene of the crime, police investigators found a butcher knife next to the body. They also found spots of blood of the same type as that of defendant. Several bottles of Chivas Regal scotch were missing, as were a metal strongbox and approximately $1,800.00. Ballistics tests performed on a bullet removed from the body of the victim indicated that it had been fired from a .38 caliber revolver. Two of defendant's roommates, Linda Pittman and Rod Reid, testified that defendant returned home several hours after the crime with their other roommate, Michael Glover. Defendant's hand was badly cut and he and Glover began packing their belongings. Pittman noticed an unusually large number of bills in Glover's wallet. At about 5:30 a. m., after consuming a bottle of Chivas Regal scotch they had brought in with them, defendant and Glover departed, telling Pittman and Reid that if anyone asked, they should say that defendant and Glover left two days before. After they left, Pittman and Reid noticed that a metal strongbox they had noticed during the packing was gone. The departure was about three and one-half hours after the crime. Furthermore, Pittman and Reid both testified defendant owned a knife like that found at the scene of the crime and Glover owned a .38 caliber revolver, the same type of gun as that used in the murder.
Since a prima facie case of conspiracy was established, the law of conspiracy was clearly applicable to the case. Accordingly, the trial judge did not err in charging the jury concerning the law of conspiracy.
Assignment of Error No. 13 is without merit.

ASSIGNMENT OF ERROR NO. 17
Defendant contends the trial judge erred in overruling his objection to the prosecutor's reference to hearsay testimony during closing argument. He argues the testimony was hearsay and, despite his failure to object when it was given, the prosecutor exceeded the scope of closing argument in referring to it.
During trial, the state called Debra Richard to testify concerning defendant's whereabouts immediately prior to the armed robbery-murder. She testified that she was an employee of the Red Lobster Inn, the scene of the crime and the former employer of defendant. On the night of the crime, she left work at about midnight and met several friends at a doughnut shop near the Inn. Sometime between 12:30 and 1:30 a. m., according to her testimony, a blue car known to her to be defendant's and occupied by two persons drove by in the direction of the Inn. She further testified that one of her friends, Donna Bonaventure, shouted "Hey, Colin." The person on the passenger side of the car stuck his arm out of the window and waved. Richard was unable to identify the persons in the car. During her testimony, defendant made no objection.
*1131 In his closing argument, the prosecutor stated: "The Bonaventure girl yelled, `Hi, Colin' and somebody passing in the car that looked like his car, on the passenger's side, waved back and there was another occupant in the car. Conceivably she couldn't identify either one of them, she didn't see them, all she did was she heard Bonaventure say `Hi, Colin' and looked up." At this point, defendant objected on the ground of hearsay. The trial judge overruled the objection.
An objection to the admissibility of testimony comes too late after the testimony has gone to the jury. State v. Richmond, 278 So.2d 17 (La.1973); State v. Foster, 164 La. 813, 114 So. 696 (1927).
La.Code Crim.P. art. 774 provides that the argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. Hearsay evidence not objected to constitutes substantive evidence. State v. Allien, 366 So.2d 1308 (La. 1978). Therefore, the state may refer in argument to hearsay evidence admitted without objection. See State v. Cason, 115 La. 897, 40 So. 303 (1906).
In the instant case, defendant did not object to the introduction of the hearsay statements when they were made. Thus, his hearsay objection during closing argument was untimely. Furthermore, because the statements constituted evidence, his objection that the prosecutor exceeded the scope of closing argument is without merit. The trial judge did not err in overruling the objection.
Assignment of Error No. 17 is without merit.

ASSIGNMENTS OF ERROR NOS. 19 AND 20
Defendant contends the trial judge erred in overruling his objections to the prosecutor's statements in closing argument that there was hostility between defendant and Fred Schmidt, the victim, and that Michael Glover had been driving defendant's automobile. He claims that these statements were not supported by the evidence and hence were not within the proper scope of closing argument.
In argument to the jury, the prosecutor thought it necessary to show a motive in order to connect defendant to the armed robbery-murder if Fred Schmidt. The prosecutor stated: "How do we connect this defendant and Mike Glover to this crime? Well, in several ways: (1) motive, there was hostility between this defendant and the victim in this case." Defendant objected, claiming there was no evidence in the record of hostility. The objection was overruled, and the prosecutor continued. He then stated: "We connect him [defendant] through and by his automobile, he was seen driving-he was seen going that-a-way, driving in the passenger's side with Glover driving in his automobile by three people." Again defendant objected, claiming there was no evidence in the record to show that Glover was driving. This objection was also overruled.
Counsel are permitted in argument to make fair and reasonable conclusions from the facts introduced in evidence. La.Code Crim.P. art. 774; State v. de la Beckwith, 344 So.2d 360 (La.1977); State v. Lockett, 332 So.2d 443 (La.1976); State v. Weathers, 320 So.2d 895 (La.1975); State v. Smith, 257 La. 1109, 245 So.2d 327 (1971). Further, counsel may properly comment on and summarize the evidence in arguing facts. State v. de la Beckwith, supra; State v. Luckett, 327 So.2d 365 (La.1975).
Brenda Rosenback testified that on the night of the murder, defendant and Fred Schmidt had had an argument. Furthermore, the manager's log kept by Fred Schmidt and introduced into evidence by the state stated: "Colin walked out, S.O.B." In view of this evidence, the prosecutor's statement that there was hostility between defendant and Fred Schmidt was not improper. It was a conclusion that the state could draw from the facts introduced in evidence.
*1132 Three persons testified that they had seen defendant's car in the vicinity of the Red Lobster Inn, the scene of the crime, just before the armed robbery-murder. Two of them further testified that two men were in the car. One testified that one of these men was defendant. Some time after the killing, defendant and Glover arrived at their apartment and packed to leave. They left together. The killing had been accomplished with a knife similar to that carried by defendant and a handgun of the same caliber as that of Glover. In view of this evidence, the prosecutor's statement that Glover was driving the car was not improper. It was a reasonable conclusion drawn from the facts in evidence.
In sum, the trial judge did not err in overruling defendant's objections to the prosecutor's statements in closing argument that there was hostility between defendant and Fred Schmidt and that Michael Glover had been driving defendant's automobile.
Assignments of Error Nos. 19 and 20 are without merit.

ASSIGNMENT OF ERROR NO. 26
Defendant contends the trial judge erred in denying his motion in arrest of judgment grounded on the claim that La.R.S. 14:30 and La.Code Crim.P. arts. 905-905.9 are unconstitutional on their face and as applied.
First, defendant argues the use of an aggravating circumstance as an element of the crime is unconstitutional because once the jury has determined guilt it has already determined the existence of an aggravating circumstance prior to the commencement of the sentencing hearing.[2]
This argument is without merit. Notwithstanding the verdict rendered in the guilt portion of the trial, to determine that the sentence of death be imposed the jury must find beyond a reasonable doubt that at least one statutory aggravating circumstance exists after a sentencing hearing. Defendant has the opportunity to introduce evidence, including that of mitigating circumstances, not introduced at trial. The jury is not bound to find the existence of an aggravating circumstance merely because it found defendant guilty of first degree murder.
La.Code Crim.P. art. 905.4(g) provides that one of the aggravating circumstances is that the "offense was committed in an especially heinous, atrocious or cruel manner." Defendant argues this provision is unconstitutionally vague and overbroad.
The argument is without merit. In Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), the United States Supreme Court answered a similar challenge to a Georgia provision authorizing imposition of the death penalty if the murder was "outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim" by stating: "It is, of course, arguable that any murder involves depravity of mind or an aggravated battery. But this language need not be construed in this way, and there is no reason to assume that the Supreme Court of Georgia will adopt such an open-ended construction." We have previously construed art. 905.4(g) as incorporating some idea of torture or pitiless infliction of unnecessary pain on the victim. State v. Sonnier, 379 So.2d 1336 (La.1979) (on original hearing); State v. English, 367 So.2d 815 (La. 1979). Accordingly, we hold here that the aggravating circumstance of art. 905.4(g) is not unconstitutionally vague and overbroad.
Defendant also argues that La. Code Crim.P. art. 905.8 accords too much discretion to the jury, resulting in arbitrary and capricious imposition of the death penalty. Article 905.8 provides:

*1133 The court shall sentence the defendant in accordance with the recommendation of the jury. If the jury is unable to unanimously agree on a recommendation, the court shall impose a sentence of life imprisonment without benefit of probation, parole or suspension of sentence.
Defendant's claim is without merit. Although the trial judge must sentence the defendant in accordance with the recommendation of the jury, all discretion has not been placed with the jury. Adequate safeguards have been provided against the arbitrary imposition of the death penalty. The jury's recommendation must be based on a finding of at least one statutory aggravating circumstance and after considering any mitigating circumstances. Moreover, despite the jury's recommendation, the trial judge has the authority to grant a new trial and this court is required to review every sentence of death to determine if it is excessive.
Additionally, we note that our capital sentence law was modeled upon the Georgia statute upheld in Gregg, supra. That statute also bound the trial judge to sentence the defendant in accordance with the recommendation of the jury.
Finally, defendant argues the sentencing provisions are unconstitutional because they allow a defendant to be sentenced to death for the type of person he is rather than for the crime he committed. Specifically, he points out that La.Code Crim.P. art. 905.2 provides that the "sentencing hearing shall focus on the circumstances of the offense and the character and propensities of the offender."
This argument is without merit. Defendant cannot be sentenced to death without a finding of the existence of a statutory aggravating circumstance, no matter what type of person he is. Moreover, it has long been accepted in this country that sentencing should be done on an individual basis. Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). As the United States Supreme Court concluded in Woodson v. North Carolina, 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976): in capital cases the fundamental respect for humanity underlying the Eighth Amendment . . . requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death.
In sum, the trial judge did not err in denying defendant's motion in arrest of judgment.
Assignment of Error No. 26 is without merit.

ASSIGNMENT OF ERROR NO. 27
Defendant contends the trial judge erred in denying his motion to discharge counsel, counsel's motion to withdraw, and defendant's motion for a new trial based on the same claims. He argues he was denied assistance of counsel because he was forced to make a choice between retaining counsel and taking the stand.
The record reveals that at the beginning of the sentencing hearing, before the jury was brought into the court, defendant moved the court to discharge Neal Wilkinson, his assistant counsel. Defendant indicated he desired to retain J. J. McKenzie as chief counsel. The court granted the motion but allowed Wilkinson to remain in the court to assist in any way he could. The jury was brought in and the prosecutor made his opening statement. Defendant then moved to discharge McKenzie. The court denied the motion and told defendant McKenzie would stay in court and advise him. Defendant then asked the judge if he could take the stand. McKenzie told the judge he had advised defendant against taking the stand and requested to withdraw. The court denied counsel's request and stated defendant could take the stand. After a recess, defendant announced he agreed with counsel not to take the stand but would argue his case. In argument, defendant told the jury he wanted to be sentenced to death. McKenzie objected, defendant concluded, and McKenzie argued mitigating circumstances to the jury.
*1134 We do not agree that defendant was forced to make a choice between retaining counsel and taking the stand. While McKenzie initially presented defendant with a choice between testifying or continued representation, counsel was never allowed to withdraw and in fact continued his vigorous assertion of defendant's case by repeated objections to argument by the prosecution and by presenting additional argument on defendant's behalf. Defendant was aware of his right to take the stand. The opportunity both to take the stand and to have counsel remained open at all times. The trial judge appropriately resolved the conflict between defendant and his counsel while at the same time recognizing defendant's right to testify. Accordingly, the trial judge did not err in denying defendant's motion to discharge counsel, counsel's motion to withdraw, and defendant's motion for a new trial based on the same claims.
Moreover, we note that, although defendant failed to take the stand, it appears clear from his closing argument that his sole motivation for taking the stand was to ask the jury to recommend the death sentence. This purpose having been fulfilled by his closing argument, it can hardly be argued defendant was deterred from testifying by the threat that counsel would no longer represent him.
Assignment of Error No. 27 is without merit.

SENTENCE REVIEW
Article 1, section 20 of the Louisiana Constitution prohibits cruel, excessive, or unusual punishment. La.Code Crim.P. art. 905.9 provides that this court shall review every sentence of death to determine if it is excessive. The criteria for review are established in La.Sup.Ct.R. 28, § 1, which provides:
Review Guidelines. Every sentence of death shall be reviewed by this court to determine if it is excessive. In determining whether the sentence is excessive the court shall determine:
(a) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors, and
(b) whether the evidence supports the jury's finding of a statutory aggravating circumstance, and
(c) whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
(a) Passion, prejudice or any other arbitrary factors
There is no evidence that defendant's sentence was imposed under the influence of passion, prejudice or any other arbitrary factors. Moreover, we note both defendant and his victim are white.
(b) Statutory aggravating circumstances

The jury in its verdict found the following statutory aggravating circumstances:
(a) The offender was engaged in the perpetration or attempted perpetration of aggravated rape, aggravated kidnapping, aggravated burglary, or armed robbery.
(b) The offense was committed in an especially heinous, atrocious or cruel manner.
Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use or force or intimidation, while armed with a dangerous weapon. In our view, the evidence amply supports the jury's finding that the defendant was engaged in the perpetration or attempted perpetration of armed robbery.
The jury also found that the offense was committed in an especially heinous, atrocious or cruel manner. We have previously construed this statutory aggravating circumstance as incorporating some idea of torture or pitiless infliction of unnecessary pain on the victim. State v. Sonnier, 379 So.2d 1336 (La.1979) (on original hearing); State v. English, 367 So.2d 815 (La.1979).
In the instant case, defendant and Glover had a gun, yet they chose first to stab Schmidt some thirty to thirty-five times in *1135 the back, neck, head, arms, and hands. One of these wounds was made in an attempt to stab through the victim's skull. As one of the police witnesses testified, the victim was "butchered." Accordingly, we find substantial evidence supporting the jury's finding that the murder was committed in an especially heinous, atrocious or cruel manner.
In sum, the evidence supports the jury's finding of two statutory aggravating circumstances.
(c) Proportionality to the penalty imposed in similar cases
Supreme Court Rule 28, § 4 provides that the district attorney shall file with this court a list of each first degree murder case in the district in which sentence was imposed after January 1, 1976. The list shall include the docket number, caption, crime convicted, sentence actually imposed and a synopsis of the facts in the record concerning the crime and the defendant. In the instant case, the list reveals that there have been twenty-eight first degree murder indictments filed in East Baton Rouge Parish. In addition, we know of two others. State v. Williams, 383 So.2d 369 (La.1980); State v. Spooner, 368 So.2d 1086 (La.1979) (reversed and remanded for new trial). Fourteen of these indictments resulted in verdicts of guilty of first degree murder.[3] Of these fourteen, three defendants, including Colin Clark, received the death penalty.[4] In all of these cases, the defendants were the actual killers[5] and the killings occurred during armed robberies. Thus, in the cases most similar to defendant's, the same penalty was imposed.[6] A review of the other first degree murder convictions in East Baton Rouge Parish shows a dissimilarity between them and the instant case in that there were arguably no aggravating circumstances[7] or there were present mitigating circumstances which justified the jury's recommendation of life imprisonment.[8]
According to a presentence investigation report and the Uniform Capital Sentence Report, defendant is a twenty-six year old white male whose parents were divorced when he was eleven. His father was an alcoholic who beat him. Although of average *1136 intelligence, defendant quit school in the tenth grade. He admitted that he started taking drugs when he was fourteen. He is divorced and has no children. Defendant's record consists of juvenile arrests involving drugs and trespassing and criminal convictions for distribution of drugs, driving while intoxicated, obstructing an officer and driving violations. His arrest in California for a drug violation led to his return to Louisiana to stand trial on the instant charge.
After having considered the above factors, we are unable to conclude that the sentence imposed in the instant case is disproportionate to the penalty imposed in other cases, considering both the crime and the defendant.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed.
DIXON, C. J., especially concurs, not agreeing that conspiracy charge was proper, but believing it was not prejudicial.
DENNIS, J., concurs in part and dissents in part with reasons. The concurring and dissenting opinion is published separately at 389 So.2d 1335.
CALOGERO, J., dissents and assigns reasons.
CALOGERO, Justice, dissenting.
I respectfully dissent from the majority's affirmance of the conviction and sentence of this defendant because I do not believe the majority's treatment of the conspiracy issue is correct. Rather I believe defendant's assignment of error No. 13 has merit.
Initially, the state did not establish a prima facie case of conspiracy, a mandatory requirement prior to charging the jury on the law pertaining to conspiracy. In the evidence presented at trial there was no showing that Clark was engaged in a conspiracy to rob or to murder. There was evidence that Clark's vehicle was seen within one hour prior to the time the burglar alarm sounded, with two occupants. There was further evidence that Clark was seen three hours after the murder with Glover, that Clark and Glover were packing their things to leave town and that Glover had a large number of bills in his wallet. This evidence hardly constitutes a prima facie showing of conspiracy to rob or murder.
Criminal conspiracy is defined as "the agreement or combination of two or more persons for the specific purpose of committing any crime . . . ." R.S. 14:26. This Court has held on numerous occasions that when the only indication of conspiracy is that two people committed a crime, and there is no showing that defendant either committed or conspired to commit the criminal act, no prima facie showing of conspiracy has been established. State v. Matthews, 354 So.2d 552 (La.1978); State v. Sheppard, 350 So.2d 615 (La.1977); State v. Bennett, 341 So.2d 847 (La.1976); State v. Kaufman, 331 So.2d 16 (La.1975) and State v. Carter, 326 So.2d 848 (La.1975).
In the present case, there has been no showing that defendant conspired with anyone to commit any crime. Unlike the cases above, all of the evidence, other than the fact that two passengers were seen in defendant's car an hour before the crime, concerns the defendant's activities three hours after the crime. There is simply no showing that the defendant and/or any other person agreed or combined to commit this crime.
Without making a prima facie showing of conspiracy, the state can not take advantage of R.S. 15:455, which makes a defendant who is part of a conspiracy bound by the acts and declarations of a co-conspirator if they are done in furtherance of the conspiracy. Without the advantages of this provision, for a first degree murder conviction the state must prove, by independent evidence, that defendant both killed the victim with the specific intent to kill and did so in the course of an armed robbery. State v. Payton, 361 So.2d 866 (La.1978). In the present case, the state did not make a prima facie showing of conspiracy and *1137 therefore, the charge on R.S. 15:455 should never have been given.
Since we can not now determine whether the jury, under R.S. 15:455, mistakenly attributed the acts of the other party to this defendant or found independently that defendant had himself committed the requisite elements of the crime of first degree murder, I believe that defendant's conviction and sentence should be reversed and the case remanded for a new trial.
NOTES
[1] Defendant has expressly abandoned Assignments of Error Nos. 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 14, 16, 18, 21, 22, 23, 24 and 25. Additionally, defendant has neither briefed nor argued Assignment of Error No. 15. Hence, we consider it to be abandoned. State v. Blanton, 325 So.2d 586 (La.1976); State v. Carlisle, 315 So.2d 675 (La.1975).
[2] At the time of the commission of the instant crime, conviction of first degree murder required proof of one of four of the aggravating circumstances listed in La.Code Crim.P. art. 905.4. State v. Payton, 361 So.2d 866 (La. 1978). The aggravating circumstance charged and found in the guilt phase of the instant case was that defendant was engaged in the perpetration or attempted perpetration of armed robbery.
[3] State v. Clark, 387 So.2d 1124, 389 So.2d 1335. (La.1980); State v. Williams, 383 So.2d 369 (La.1980); State v. Williams, No. 64,987, (La., March 3, 1980) (rehearing granted); State v. Glover, 380 So.2d 626 (La.1980); State v. Allen, 380 So.2d 28 (La.1980); State v. Foote, 379 So.2d 1058 (La.1980); State v. Collins, 378 So.2d 928 (La.1979); State v. Howard, 377 So.2d 1226 (La.1979); State v. Gertenschloger, 377 So.2d 130 (La.1979); State v. Edwards, 375 So.2d 1365 (La.1979) (remanded for further proceedings); State v. Spooner, 368 So.2d 1086 (La.1979) (reversed and remanded for new trial); State v. Holmes, 388 So.2d 722 (La. 1979); State v. Fitzpatrick, No. 66,770 (La., filed Feb. 6, 1980); State v. Gleim, No. 3-79-344 (La. 19th Jud.Dist.Ct., filed Jan. 31, 1980).
[4] The two other cases in which the death penalty was imposed are State v. Williams, 383 So.2d 369 (La.1980), and State v. Williams, No. 64,987 (La., March 3, 1980) (rehearing granted).
[5] Although both Michael Glover, State v. Glover, 380 So.2d 626 (La. 1980), and Ralph Holmes, Jr., State v. Holmes, 388 So.2d 722 (La.1979), were parties to the same killings as were Colin Clark and Robert W. Williams and were convicted of first degree murder, neither were sentenced to death. However, neither was the actual killer in their respective crimes.
[6] In State v. Edwards, 375 So.2d 1365 (La.1979) (remanded for further proceedings), defendant was the murderer and the killing occurred during an armed robbery. Defendant was sentenced to life imprisonment. There, however, defendant was seventeen years old; hence, it is possible the jury found sufficient mitigation to recommend life imprisonment rather than death.
[7] State v. Allen, 380 So.2d 28 (La.1980); State v. Foote, 379 So.2d 1058 (La.1980); State v. Collins, 378 So.2d 928 (La.1979); State v. Gertenschloger, 377 So.2d 130 (La.1979); State v. Spooner, 368 So.2d 1086 (La.1979) (reversed and remanded for new trial); State v. Gleim, No. 3-79-344 (La. 19th Jud.Dist.Ct., filed Jan. 31, 1980).
[8] State v. Glover, 380 So.2d 626 (La.1980); State v. Howard, 377 So.2d 1226 (La.1979); State v. Edwards, 375 So.2d 1365 (La.1979) (remanded for further proceedings); State v. Holmes, 386 So.2d 365 (La.1979); State v. Fitzpatrick, 386 So.2d 365 (La.1980).