Argued and submitted November 3, 1992, decision of the Court of Appeals and judgment of the circuit court affirmed July 1, 1993

STATE OF OREGON,
*Respondent on Review,*

*v.*

DIANA LYNN HANCOCK,
*Petitioner on Review.*

(CC 900714; CA A65081; SC S39185)

854 P2d 926

Guy B. Greco, Newport, argued the cause and filed the petition for petitioner on review.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the response were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

PETERSON, J.

Unis, J., dissented and filed an opinion in which Carson, C. J., and Fadeley, J., joined.

## PETERSON, J.

The question in this case is whether defendant's state and federal confrontation rights were violated by the admission of a laboratory report pursuant to ORS 475.235. That statute provides in part:

"(3) In all prosecutions under ORS 475.005 to 475.375 and 475.805 to 475.999 involving the analysis of a controlled substance or sample thereof, a certified copy of the analytical report signed by the director of the state police crime detection laboratory or the criminalist conducting the analysis shall be accepted as prima facie evidence of the results of the analytical findings.

"(4) Notwithstanding any statute or rule to the contrary, the defendant may subpoena the criminalist to testify at the preliminary hearing and trial of the issue at no cost to the defendant."

Defendant claims that the statute, on its face, "violates the State and Federal Confrontation Clauses," because the exhibit is admissible without the testimony of the person who performed the tests. We hold that the statute does not violate either constitutional provision.

Defendant was charged with Delivery of Marijuana for Consideration, a Class B felony. ORS 475.992(2)(a). At trial, the state produced evidence that, on December 19, 1989, defendant drove two men — her boyfriend Terry and an undercover drug informant named Smith — to a residence in Lincoln City. Smith gave Terry $10 to purchase $5 worth of marijuana (the remaining $5 to be for Terry's use). Terry entered the residence and returned with a small quantity of leafy green material that appeared to Smith to be marijuana. He gave Smith a portion in a small plastic bag. Smith testified that he subsequently marked the bag with his initials and the date and transferred the bag to Detective Groat. Groat also marked the bag. The bagged substance, still bearing the markings, was received in evidence.

Groat testified that he filled out a receipt, placed the evidence in an evidence locker at the Lincoln City Police Department, filled out various forms, sent the evidence to the Oregon State Police Crime Laboratory for testing, and later received from the laboratory a report that identified the substance as marijuana. An Oregon State Police officer

personally returned to Groat the bagged substance that had been sent to the laboratory. Groat, who had years of training and experience in drug detection, testified that, in his opinion, the substance was marijuana.

Pursuant to ORS 475.235(3), the state also offered in evidence the crime laboratory report. The report did not contain a description of the bag that the laboratory had received (*i.e.*, a plastic bag with Smith's and Groat's markings and a date on it). Instead, it identified the agency number, the case number, and the suspects' names, "Diane" (defendant) and "Terry." The report reads:

"On December 27, 1989, this crime laboratory received, from Detective Groat, the following:

"Exhibit 1 — A small plastic bag containing less than one gram of green vegetable material. Analysis of this Exhibit reveals that it is Marijuana, a controlled substance."

Defendant objected to the report, arguing that its admission violated her right, under both the state and federal constitutions, to confront the witnesses against her.[1] She also asserted that the state had failed to establish the connection between the bag of leafy green material in evidence and the "green vegetable matter" analyzed in the report. The trial court overruled the objections, and a jury found defendant guilty.

On appeal, defendant challenged the admission of the report as violative of her state and federal confrontation rights. She also asserted that the chain-of-custody evidence was inadequate to support admission into evidence of the bag or information concerning its contents. On the confrontation issue, she argued that the state had not satisfied the two-part test established by *Ohio v. Roberts*, 448 US 56, 65-66, 100 S Ct 2531, 65 L Ed 2d 597 (1980), because it failed to show that the criminalist was unavailable and that the report possessed "adequate indicia of reliability." The Court of Appeals

---

[1] Article I, section 11, of the Oregon Constitution, provides in part:

"In all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face[.]"

The Sixth Amendment to the Constitution of the United States provides in part:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]"

affirmed the trial court. *State v. Hancock*, 111 Or App 92, 825 P2d 648 (1992). After noting that a declarant's unavailability is not always a prerequisite for the admission of hearsay evidence in a criminal trial, the Court of Appeals determined that the laboratory report was sufficiently trustworthy and held that the report's admission pursuant to ORS 475.235(3) did not violate either the state or federal constitution. 111 Or App at 96, 98. We affirm the decision of the Court of Appeals, but for different reasons.

■　　We consider defendant's subconstitutional argument first. *See Sterling v. Cupp*, 290 Or 611, 614, 625 P2d 123 (1981) (if a state provides the protection that a defendant seeks under its own laws, it is not necessary to reach a constitutional issue). Defendant is correct that the state must prove that the marijuana analyzed by the laboratory is the vegetable matter that was seized by Smith. In the light of the testimony regarding the chain of custody and of the report's identification of the relevant names and numbers, we are satisfied that the trial court did not err in ruling that the report adequately was linked to the bag of marijuana in evidence so that a trier of fact could conclude that the material purchased for Smith by Terry was the same material that was tested and identified by the laboratory.[2] We turn, then, to the confrontation issue.

■　　Under ORS 475.235(3), it was unnecessary for the criminalist to appear at trial and testify that the leafy green material tested at the laboratory was marijuana; instead, that declaration was made through a written and certified report. The statute has two aspects: one concerns authentication of the record; the other enlarges the hearsay exception. The state acknowledges that, because ORS 475.235(3) permits an out-of-court statement to be offered to prove the truth of the matter asserted, it authorizes the use of hearsay. OEC 801(3).[3] However, OEC 802 provides:

---

[2] *See* OEC 901(1) ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.").

[3] OEC 801(3) provides:

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

10

"Hearsay is not admissible *except* as provided in ORS 40.450 to 40.475 or *as otherwise provided by law.*" (Emphasis added.)

The criminalist's report is admissible over a hearsay objection, because its admission is "as otherwise provided by law." ORS 475.235(3).

■ We turn to the question whether admitting the report under ORS 475.235 violated defendant's state or federal constitutional right to confront the witnesses against her. We first consider the matter under Article I, section 11, of the Oregon Constitution. The specific constitutional question presented is whether the statute diminishes the right to confront the witness and, more specifically, the two rights protected by the constitutional guarantee: the right to cross-examine and the right to demonstrate the witness' demeanor "so that the credibility of the witness is displayed in the courtroom." *State v. Herrera*, 286 Or 349, 353-54, 594 P2d 823 (1979).

In *State v. Mai*, 294 Or 269, 274-75, 656 P2d 315 (1982), this court held that "it is doubtless permissible to establish reasonable procedures which must be followed in order [for a defendant] to exercise a right granted by the constitution. The procedures must not, however, result in unfairness." (Citations omitted.) (The statutory requirement upheld in *Mai* was the requirement that a defendant disclose to the state the names and addresses of witnesses that the defendant intends to call at trial, in default of which, under some circumstances, the defendant may not call those witnesses.) We believe that ORS 475.235(3) and (4) comprise a similarly "reasonable procedure" that must be followed in order for a defendant to exercise a constitutional right — in this case, the confrontation right.

A factual scenario helps to make our point. Suppose that the district attorney said to a defendant, before trial, "Must I bring in my criminalist? I'll do it, if you wish. But you know what the contents of his reports are. You know if you intend to cross-examine him or not. Here's what I propose: If you want to cross-examine the criminalist, I'll have him here. If you don't, will you stipulate to my using the report instead? [The stipulation will have to cover chain of custody, authenticity, and hearsay use of the substance of the report.] That'll

save us some time and let you concentrate on other areas of the case." Defense counsel agrees, and the report is received into evidence without the criminalist's being called. From our experience and from the legislative history, we know that such scenarios frequently occurred before the enactment of ORS 475.235. The legislative history shows that, in 1988 (the year before ORS 475.235 was enacted), the Oregon State Police Crime Laboratory received approximately 8,800 subpoenas, but criminalists actually testified in only 10 percent of the cases. Minutes, House Judiciary Crime and Corrections Subcommittee, Jan. 19, 1989, Exh C.

This statute is a legislative decision to make what amounts to the same offer on behalf of the prosecutor in *every* such case. A defendant is told by the statute that the state will let the defendant select the method by which the state will prove the nature of the controlled substance that is involved in the case. The statute's offer to allow the defendant to procure the criminalist as a witness at no charge is just another way of saying that the state will call the criminalist if the defendant elects to have it do so. When the statute is read in this way, there is no confrontation clause problem to discuss. The state will be required to attempt to prove its case by whatever means the defendant selects. The statute, in other words, is just a formalized way of asking a defendant to stipulate to use of the criminalist's report, rather than requiring that the criminalist be called to establish that particular element of the offense.

It does not matter whether, in a particular case, the evidence is more important or less important. In one case, the identification of controlled substances seized from a defendant may be pivotal. In another case, identification virtually may be irrelevant to the issues on which the parties actually focus. The point is that this evidence, like other kinds of hearsay, is admissible (and raises no constitutional problem) if unobjected to or stipulated to (as to admissibility). ORS 475.235 is a formalized way of obtaining a stipulation to admissibility of the report. What the statute does is to tell a defendant that a small procedural step must be taken if she wants to exercise her confrontation right. The state still has two ways to prove its case. One is to do it the old-fashioned way, by calling the criminalist; the other is under the statute.

Defendant has the choice to compel the state to prove its case the old-fashioned way. All she need do is put the state on notice by subpoenaing the criminalist. If she does not, she waives the right to cross-examine the criminalist.

Defendant has the right to confront the criminalist. Her right to confront the criminalist has not been violated. By its very terms, ORS 475.235(4) expressly *safeguards* a defendant's right to confront and cross-examine, "face-to-face," the person who performed the tests. We interpret the statute to *protect* the right of a defendant, if he or she chooses, to have an opportunity to cross-examine the person conducting the analysis before the analytical report is received in evidence. If a defendant wants to cross-examine the criminalist, he or she must subpoena the criminalist. Service of the subpoena puts the state on notice that the defendant wants to cross-examine the criminalist. At trial, the state can, if it wishes, call the criminalist to testify to the testing processes, or it can offer the report under subsection (3) of ORS 475.235. In either event, before the report is received in evidence, if the defendant has subpoenaed the criminalist, the defendant must be given the opportunity to cross-examine the criminalist. This construction of the statute protects the defendant's confrontation rights and avoids any confrontation problem. *See State v. Jackson*, 224 Or 337, 345, 356 P2d 495 (1960) (court has "a duty to give an act a constitutional construction if it can be done without wrenching the meaning of words").

As with any proponent of evidence, the state has the burden of establishing the evidential foundation for the test report, either by using the procedure specified in ORS 475.235(3) or by calling the person who did the testing. The only "burden" on the defendant is to notify the state, by subpoenaing the criminalist, that he or she insists on the right to cross-examine the person who performed the tests. This is no more burdensome than the requirement that a defendant, before trial, disclose to the state the names and address of witnesses, ORS 135.835(1); the reports of experts, ORS 135.835(2); documents and objects, ORS 135.835(3); or give notice of an alibi defense, ORS 135.455.[4]

---

[4] Granted, the statutes cited in the text concern evidence that a *defendant* may offer, not evidence that the state must offer in order to prove its case. The point is that all the statutes place a reasonable burden on a defendant in order to exercise a

Defendant's opportunity to require the attendance of the criminalist protects the truth-finding process that is guaranteed by Article I, section 11, including, specifically, her right to cross-examination. The burden of subpoenaing the criminalist is neither unreasonable nor unfair. Contrary to defendant's assertions, ORS 475.235(3) and (4) do not implicate, much less violate, defendant's confrontation right under the state constitution.

The same result obtains under the federal constitution. The Supreme Court of the United States has stated that a main and essential purpose of confrontation is to protect the right to cross-examine the witness. *Douglas v. Alabama*, 380 US 415, 418, 85 S Ct 1074, 13 L Ed 2d 934 (1965). Here, for the reasons stated above, that right is fully protected under our construction of the statute.[5]

We have considered defendant's other assignments of error and conclude that no errors were committed by the trial court.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**UNIS, J.,** dissenting.

Until today, this court has attempted to effectuate the goals of the Confrontation Clause in Article I, section 11, of the Oregon Constitution by placing limits on the kinds of

---

constitutional right. Here, the constitutional right that defendant claims has been violated is *her* right to confront the criminalist. As stated in the text and in *State v. Mai*, 294 Or 269, 274, 656 P2d 315 (1982), it is "permissible to establish reasonable procedures which must be followed in order to exercise a right guaranteed by the constitution."

[5] More recently, the Supreme Court has limited the applicability of the unavailability requirement in Sixth Amendment jurisprudence. *See White v. Illinois*, 502 US ___, 112 S Ct 736, 116 L Ed 2d 848, 858 (1992) (unavailability need not be shown before introducing testimony under the "spontaneous declaration" and "medical examination" exceptions to the hearsay rule); *United States v. Inadi*, 475 US 387, 394, 106 S Ct 1121, 89 L Ed 2d 390 (1986) (unavailability need not be shown before admitting the statement of a co-conspirator).

We need not and do not reach the question whether the two-part test of *Ohio v. Roberts*, 448 US 56, 65-66, 100 S Ct 2531, 65 L Ed 2d 597 (1980), and *State v. Campbell*, 299 Or 633, 648, 705 P2d 694 (1985), on which defendant relies, has been met. Under our analysis, defendant's right to confront the witness has not been compromised by ORS 475.235; it is therefore unnecessary to discuss the two-part test of *Ohio v. Roberts* and *State v. Campbell*.

hearsay that may be received against a defendant in a criminal prosecution. Today, the majority holds that admission of an extra-judicial statement (*i.e.*, the written and certified crime laboratory report containing evidence that bears directly on a central issue in this case) without the declarant's testimony did not deny defendant the right "to meet witnesses face to face," which is guaranteed by Article I, section 11, of the Oregon Constitution. In so doing, the majority mischaracterizes the plain meaning of ORS 475.235(3) and (4),[1] an evidentiary hearsay exception, to require a defendant to take what the majority describes as a "small procedural step" ("subpoenaing the criminalist") as a precondition to the exercise of defendant's constitutional confrontation right under both Article I, section 11, of the Oregon Constitution, 317 Or at 11-12, and the Sixth Amendment to the Constitution of the United States, 317 Or at 13.

The "small procedural step" imposed by the majority is not a step that is in harmony with the plain meaning of ORS 475.235(3) and (4), the text and goals of the Confrontation Clause contained in Article I, section 11, of the Oregon Constitution, the past precedents of this court in interpreting that constitutional provision, or the presumption of innocence and fundamental principles that "the state must prove every ingredient of an offense beyond a reasonable doubt and it may not, by presumption or otherwise, shift to the defendant the burden of disproving an element of the crime," *State v. Burrow*, 293 Or 691, 703, 653 P2d 226 (1982) (calling this the "*Mullaney* rule" based on *Mullaney v. Wilbur*, 421 US 684, 685, 95 S Ct 1881, 44 L Ed 2d 508 (1975)).[2]

---

[1] ORS 475.235(3) and (4) provide:

"(3) In all prosecutions under ORS 475.005 to 475.375 and 475.805 to 475.999 involving the analysis of a controlled substance or sample thereof, a certified copy of the analytical report signed by the director of the state police crime detection laboratory or the criminalist conducting the analysis shall be accepted as prima facie evidence of the results of the analytical findings.

"(4) Notwithstanding any statute or rule to the contrary, the defendant may subpoena the criminalist to testify at the preliminary hearing and trial of the issue at no cost to the defendant."

[2] *See also State v. Boots*, 315 Or 572, 594, 848 P2d 76 (1993) (Unis, J., dissenting) (discussion of presumption of innocence); ORS 10.095(6) (jury is to be instructed in criminal case that a person is innocent until proven guilty beyond a reasonable doubt); *State v. Williams*, 313 Or 19, 40, 828 P2d 1006 (1992) (in state criminal trials, Due Process Clause of Fourteenth Amendment "protects the accused

I can support neither the majority's analysis of ORS 475.235(3) and (4) nor its anti-textual conclusion that subordinates Confrontation Clause values, the presumption of innocence, and prosecutorial responsibilities to considerations of prosecutorial efficiency. I believe that past precedents of this court fully apply here and establish a clear violation of defendant's confrontation rights under Article I, section 11, of the Oregon Constitution. I, therefore, respectfully dissent.

Before reaching defendant's constitutional confrontation claims, I will first examine the statutory law. *See State v. Nielsen*, 316 Or 611, 618, 853 P2d 256 (1993) (the proper sequence of events is to analyze the state's law, including its constitutional law, before reaching a federal constitutional claim).

In this case, the crime laboratory report was a "written assertion" constituting a "statement," OEC 801(1)(a), which was offered in evidence by the prosecution at defendant's trial to prove the truth of the matter asserted in it, *i.e.*, that an analysis of the green vegetable material in the small plastic bag received from Detective Groat was marijuana, a controlled substance. Therefore, the crime laboratory report was hearsay under OEC 801(3),[3] but is admissible against a hearsay objection under an exception to OEC 802, the rule against hearsay,[4] under ORS 475.235(3).

ORS 475.235(3) allows the prosecution to introduce in evidence in its case-in-chief, over hearsay and lack of authentication objections, "a certified copy of the analytical

---

against conviction except upon proof beyond a reasonable doubt of the facts that constitute the crime"); *id.* at 46-49 (Unis, J., dissenting) (discussing burden of proving guilt beyond a reasonable doubt).

[3] OEC 801(3) provides:

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

For purposes of the hearsay rule, "[a] 'declarant' is a person who makes a statement." OEC 801(2).

[4] OEC 802 provides:

"Hearsay is not admissible except as provided in [OEC 801 to OEC 806] or as otherwise provided by law."

report signed by the director of the state police crime detection laboratory or the criminalist conducting the analysis" (crime laboratory report). Under ORS 475.235(3), the crime laboratory report, once admitted, is "prima facie evidence of the results of the analytical findings [of the substance tested]."

The majority states:

"A defendant is told by the statute that the state will let the defendant select the method by which the state will prove the nature of the controlled substance that is involved in the case. The statute's offer to allow the defendant to procure the criminalist as a witness at no charge is just another way of saying that the state will call the criminalist if the defendant elects to have it do so. * * * The state will be required to attempt to prove its case by whatever means the defendant selects. The statute, in other words, is just a formalized way of asking a defendant to stipulate to use of the criminalist's report, rather than requiring that the criminalist be called to establish that particular element of the offense." 317 Or at 11.

The majority's interpretation of ORS 475.235(3) and (4) is at odds with the plain meaning of those statutory provisions. Not only do the majority's statements, quoted above, fail to reflect the plain meaning of ORS 475.235(3) and (4),[5] but they mischaracterize and are inconsistent with the majority's own ultimate analysis in this case. If those understandings of ORS 475.235(3) and (4) were accurate, by objecting to the introduction of the hearsay report without the opportunity to meet the declarant face to face, defendant made it clear that he desired that the state either call the criminalist or establish his unavailability. Nevertheless, notwithstanding its rhetoric suggesting otherwise, the majority requires the state to do nothing.

ORS 475.235(4) states that the defendant may subpoena the criminalist to testify at no cost to the defendant. Although that provision could suggest that the legislature intended that the state need not call the criminalist in order

---

[5] Under the facts of this case, the majority's "factual scenario" and its suggestion that the statute is the functional equivalent of requesting a stipulation regarding the admissibility of evidence, 317 Or at 10-11, is untenable. Far from stipulating to the introduction of the evidence, defendant objected to its introduction.

to admit the report, the language in fact says nothing about whether the state must call the criminalist in its case. It states only that the defendant may subpoena the criminalist to testify, apparently in the presentation of the defense, which is only *after* the state already necessarily has carried its burden of presenting a *prima facie* case against defendant.

As this court stated in *State v. Smyth*, 286 Or 293, 300, 593 P2d 1166 (1979), with respect to a statutory exception to the hearsay rule, the statutory exception to the hearsay rule surely is "meant to apply to criminal proceedings *only so far as consistent with the constitutional right of confrontation.*" (Emphasis added.)[6] *See also State v. Nielsen, supra*, 316 Or at 642 (Unis, J., dissenting) ("[t]he fact that hearsay may be admissible under a hearsay exception does not nullify either the state or federal constitutional confrontation argument"); Kirkpatrick, Oregon Evidence 521 (2d ed 1989) ("evidence may still be excluded as violating the defendant's right of confrontation even though [OEC] 802[, the hearsay rule,] is satisfied").

Here, ORS 475.235(3) and (4) cannot, and do not purport to, remove constitutional Confrontation Clause prerequisites to the admissibility of hearsay evidence. Moreover, the Oregon Constitution does not leave it to the legislature to strike a balance between the right of confrontation and prosecutorial efficiency.

---

[6] Although the Confrontation Clause and the evidentiary rule against hearsay may stem from the same roots and generally protect similar values, neither this court in interpreting Article I, section 11, of the Oregon Constitution, nor the United States Supreme Court in interpreting the Sixth Amendment has equated the two. *See Dutton v. Evans*, 400 US 74, 86, 91 S Ct 210, 27 L Ed 2d 213 (1970) (so stating); *California v. Green*, 399 US 149, 155-56, 90 S Ct 1930, 26 L Ed 2d 489 (1970) (same). A literal reading of the Confrontation Clause "would abrogate virtually every hearsay exception, a result long rejected as unintended and too extreme." *Ohio v. Roberts*, 448 US 56, 63, 100 S Ct 2531, 65 L Ed 2d 597 (1980). *See State v. Farber*, 295 Or 199, 207, 666 P2d 821 (1983) ("some hearsay statements are admissible, even in light of the confrontation clause"); *See also State v. Herrera*, 286 Or 349, 354-55, 594 P2d 823 (1979) (right of confrontation is not absolute). By the same token, if satisfying a statutory hearsay exception guaranteed admissibility of the hearsay evidence, the Confrontation Clause could be virtually abrogated. Rather, the evidentiary hearsay analysis and the constitutional confrontation analysis are independent inquiries that both must be satisfied in order to admit hearsay evidence.

Article I, section 11, of the Oregon Constitution provides in part:

"In all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face * * *."[7]

Whatever else it was intended to secure, the text of the Oregon Confrontation Clause was intended to prevent the historical abuse of trial by formalized testimonial materials, *e.g.*, trial by *ex parte* affidavits. Such a trial deprives a criminal defendant of the benefit of the adversary process.[8]

The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a defendant in a criminal prosecution by subjecting the evidence to rigorous testing in the context of an adversary proceeding before the trier of fact. *See State v. Herrera*, 286 Or 349, 353-54, 594 P2d

---

[7] "The defendant's right in a criminal prosecution 'to meet the witnesses face to face'[, guaranteed by Article I, section 11, of the Oregon Constitution,] has been part of Oregon's Bill of Rights since 1859 * * *." *State v. Smyth*, 286 Or 293, 297, 593 P2d 1166 (1979). It was adopted as proposed, without amendment and without any reported debate. *See* Carey, *The Oregon Constitution and Proceedings and Debates of the Constitutional Convention of 1857* 119-20, 310 (1926). Textually, Oregon's Confrontation Clause "is derived from the Massachusetts constitution of 1780, one of the original state Declarations of Rights, from which it found its way into the federal [S]ixth [A]mendment in 1789." *State v. Smyth, supra*, 286 Or at 297.

[8] In interpreting Article I, section 11, of the Oregon Constitution, the court has looked to the United States Supreme Court's decisions interpreting the federal parallel Sixth Amendment Confrontation Clause. *See, e.g., State v. Herrera, supra*, 286 Or at 353; *State v. Smyth, supra*, 286 Or at 297-300. The Confrontation Clause of the Sixth Amendment was intended to prevent the historical abuse of trial by formalized testimonial materials, *e.g.*, trial by *ex parte* affidavits. *See Mattox v. United States*, 156 US 237, 242-43, 15 S Ct 337, 39 L Ed 409 (1895) ("[t]he primary object of the [Confrontation Clause] was to prevent depositions or *ex parte* affidavits * * * being used against the prisoner in lieu of personal examination and cross-examination of the witness in which the accused has the opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief"); *California v. Green, supra*, 399 US at 156 ("the particular vice that gave impetus to the confrontation claim was the practice of trying defendant on 'evidence' which consisted solely of *ex parte* affidavits or depositions secured by the examining magistrates, thus denying the defendant the opportunity to challenge his accuser in a face-to-face encounter in front of the trier of fact"); *id.*, 399 US at 179 (Harlan, J., concurring) ("the Confrontation Clause was meant to constitutionalize a barrier against flagrant abuses, trials by anonymous accusers, and absentee witnesses"); *Dutton v. Evans, supra*, 400 US at 94 (Harlan, J., concurring in result) ("the paradigmatic evil the Confrontation Clause was aimed at [was] trial by affidavit"); *Maryland v. Craig*, 497 US 836, 845, 110 S Ct 3157, 111 L Ed 2d 666 (1990) (quoting with approval language in *Mattox v. United States, supra*, 156 US at 242-43, quoted above).

823 (1979) (stating essentially same); *State v. Smyth, supra*, 286 Or at 300 (" '[t]he right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness' ") (quoting *Barber v. Page*, 390 US 719, 725, 88 S Ct 1318, 20 L Ed 2d 255 (1968)).[9]

"In *State v. Stevens*, 311 Or 119, 140-41, 806 P2d 92 (1991), this court stated the test to be followed in analyzing a claim under Article I, section 11, that admission of a hearsay statement violates a defendant's confrontation rights:

" 'In *State v. Campbell*, 299 Or 633, 648, 705 P2d 694 (1985), this court adopted the reasoning of the Supreme Court of the United States to determine "what constitutes unavailability of a hearsay declarant and what constitutes adequate indicia of reliability of hearsay declarations to satisfy our state constitutional confrontation clause." The leading Supreme Court case in this area is *Ohio v. Roberts*, 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980), where the Court established a two-part test to decide whether a defendant's Sixth Amendment confrontation rights have been satisfied when an out-of-court statement by one not testifying at trial is admitted. The Court held that the declarant must "[i]n the usual case" be unavailable, and the statement must have "adequate indicia of reliability." 448 US at 65-66. When the statement falls within a "firmly rooted hearsay exception," courts will deem it to be reliable. 448 US at 66. In the alternative, reliability may be supported by "a showing of particularized guarantees of trustworthiness." *Ibid.*' " *State v. Nielsen, supra*, 316 Or at 622-23.

Precedents of this court require that when a hearsay declarant is absent from court, the prosecution must demonstrate the unavailability of the declarant whose statement it

---

[9] The United States Supreme Court has stated:

"[T]he right guaranteed by the Confrontation Clause includes not only a 'personal examination,' * * * but also '(1) insures that the witness will give his statements under oath — thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; [and] (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." *Maryland v. Craig, supra*, 497 US at 845-46 (quoting *California v. Green, supra*, 399 US at 158).

wishes to use against the defendant. A witness is not unavailable for confrontation clause purposes unless the prosecutor has made a good-faith effort to obtain the declarant's presence at trial. *State v. Nielsen, supra*, 316 Or at 623; *State v. Stevens, supra*, 311 Or at 141; *State v. Smyth, supra*, 286 Or at 299-301. "The burden is on the prosecutor to produce evidence to show the trial court what circumstances exist which make use of the [hearsay] genuinely necessary." *State v. Herrera, supra*, 286 Or at 355. The right to confront witnesses against a defendant, although not without exception, is not a convenience that defendant may exercise; "it is basically a trial right." *State v. Smyth, supra*, 286 Or at 300 (quoting *Barber v. Page, supra*, 390 US at 725). Therefore, unless the prosecution establishes the "unavailability" of the witness (*i.e.*, necessity), the proffered hearsay is inadmissible against an Article I, section 11, Confrontation Clause objection.[10] "The prosecutor is the party who wishes to use the [hearsay]" and, therefore, the prosecutor "must * * * justify the use of the [hearsay] evidence and show he was in no way responsible for the necessity of its use." *State v. Herrera, supra*, 286 Or at 358.

ORS 475.235(3) and (4), at issue in this case, can easily be read to comply with these constitutional principles, which is our obligation where possible, *State v. Smyth, supra*, 286 Or at 296 (citing *State v. Harmon*, 225 Or 571, 358 P2d 1048 (1961)). ORS 475.235(3) provides that "a certified copy

---

[10] Under the test adopted in *State v. Campbell*, 299 Or 633, 648, 705 P2d 694 (1985), and as reaffirmed in *State v. Nielsen*, 316 Or 611, 622, 853 P2d 256 P2d (1993), once unavailability of the hearsay declarant is shown, past decisions of this court hold that the Confrontation Clause in Article I, section 11, of the Oregon Constitution allows only hearsay that is accompanied by "indicia of reliability." *See, e.g., State v. Cornell*, 314 Or 673, 682-83, 842 P2d 394 (1992). "Reliability" can be inferred, without more, where the evidence falls within a "firmly rooted" hearsay exception. *Id.* at 683. If the evidence does not fall within a "firmly rooted" hearsay exception, it must be excluded, at least in the absence of a showing of "particularized guarantees of trustworthiness." *Id.* Whether hearsay is accompanied by "indicia of reliability" must be determined on the basis of the "totality of the circumstances" that surrounds the making of the statement and that rendered the declarant particularly worthy of belief. *State v. Nielsen, supra*, 316 Or at 640 (Unis, J., dissenting).

Neither this court nor the United States Supreme Court has clarified the meaning of the phrase "firmly rooted." Whether "firmly rooted" is a function of the longevity of an exception, the number of jurisdictions recognizing it, or both, or something else, remains uncertain. As to longevity, the hearsay exception in ORS 475.235(3) is relatively new, having been enacted in 1989. Or Laws 1989, ch 194, § 1.

of the analytical report signed by * * * the criminalist conducting the analysis shall be accepted as prima facie evidence of the results of the analytical findings." Compliance with the statute merely removes the hearsay and authentication barriers to admissibility of the report; it neither removes nor purports to remove constitutionally-required prerequisites to the admissibility of the report. Removing the *statutory* hearsay and authentication barriers to admissibility is conceptually separate and has significant and independent consequences from Confrontation Clause concerns.

The majority's construction of ORS 475.235(3) and (4) is at odds with the constitutional principles discussed above. It is the state's burden to prove defendant guilty beyond a reasonable doubt by proving each element of the charge. On appropriate objection, the unavailability of a hearsay declarant is a prerequisite mandated by Article I, section 11, to introducing hearsay. *State v. Nielsen, supra.* The hearsay declarant's unavailability is, therefore, part of the state's burden in proving defendant guilty through the use of that hearsay. A criminal defendant has no obligation to assist the prosecution in meeting its burden of proof by subpoenaing the witness whose testimony could be most critical to the case against him. If the evidence introduced by the prosecution in its case-in-chief "would not support a verdict against the defendant," the defendant would be entitled to a judgment of acquittal. ORS 136.445.

Although the majority recognizes the unavailability requirement for the introduction of hearsay evidence, the majority states that if defendant wants to cross-examine the criminalist, she must subpoena the criminalist as a precondition to the exercise of her Confrontation Clause rights. 317 Or at 12.[11] Indeed, if the majority's analysis of the statute

---

[11] No doubt this procedure is more efficient for the prosecutor, but the price is defendant's constitutional guarantees. The observation that the purpose of enshrining the requirement that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him" in the Sixth Amendment Confrontation Clause, "was to assure that none of the many policy interests from time to time pursued by statutory law could overcome a defendant's right to face his or her accusers in court," *Maryland v. Craig, supra,* 497 US at 861 (Scalia, J., dissenting), is, in my view, equally applicable to Article I, section 11.

The majority was apparently influenced by the legislative history concerning ORS 475.235(3) and (4). The majority states:

were correct, it arguably follows that there likewise would be no Confrontation Clause problem with a more sweeping statutory scheme that allows the state to introduce *all* of its evidence by affidavit as long as the defendant has the ability to call the declarants to testify.

But a criminal defendant's right to have the process to compel witnesses (subpoena witnesses) to attend his or her trial and have them testify is already ensured by the Compulsory Process Clauses of the state and federal constitutions. *See* Article I, section 11, of the Oregon Constitution[12] and the Sixth Amendment to the Constitution of the United States.[13] *See also State v. Mai,* 294 Or 269, 272, 656 P2d 315 (1982) (the Compulsory Process Clause "protects both the [defendant's] right to the attendance of the witness and the testimony of the witness"). An indigent defendant always has the option to exercise that right at no cost to him or her because the state incurs that cost. Therefore, by holding that the state's only obligation in ensuring a defendant's confrontation rights is to allow a defendant the opportunity to call the witnesses, a right already guaranteed by the Compulsory Process Clause, the majority effectively reads the Confrontation Clause out of the Oregon Constitution.

I agree with Justice Marshall that "the Confrontation Clause gives a defendant [in a criminal prosecution] a *right* to be confronted with the witnesses against him, not merely an opportunity to seek out witnesses on his own." *United States v. Inadi,* 475 US 387, 408, 106 S Ct 1121, 89 L Ed 2d 390 (1986) (Marshall, J., dissenting). The defendant's ability to subpoena witnesses cannot substitute for the state's

---

"The legislative history shows that, in 1988 (the year before ORS 475.235 [(3) and (4) were] enacted) the Oregon Crime Laboratory received approximately 8,800 subpoenas, but criminalists actually testified in only 10 percent of the cases." 317 Or at 11 (citing minutes from House Judiciary Crime and Corrections Subcommittee).

[12] Article I, section 11, of the Oregon Constitution provides:

"In all criminal prosecutions, the accused shall have the right * * * to have compulsory process for obtaining witnesses in his favor[.]"

[13] The Sixth Amendment to the Constitution of the United States provides:

"In all criminal prosecutions, the accused shall enjoy the right * * * to have compulsory process for obtaining witnesses in his favor[.]"

obligation to prove its case by witnesses who confront the defendant or to justify their absences and the introduction of their hearsay statements in a constitutionally sufficient manner.

In this case, the trial court allowed the prosecution to substitute "paper" evidence — the crime laboratory report — for personal "face-to-face" confrontation with the criminalist who conducted the analysis of the alleged controlled substance in establishing the *prima facie* case against defendant, when there was no showing by the prosecutor of "unavailability," *i.e.*, when there was no showing that the prosecution had made a good-faith but unsuccessful effort to obtain the criminalist's presence at defendant's trial.

The nature and purpose for which the "paper" evidence (crime laboratory report) was offered, the status of the person who prepared the report, and the utility of trial confrontation (*i.e.*, whether the production of the hearsay declarant is of significant value or, conversely, of little utility) are factors that should be analyzed to ensure that admission does not violate the Confrontation Clause.

The crime laboratory report contained evidence that bears directly on a central issue in this case. The report was hearsay evidence that could be characterized as "crucial" to the prosecution and "devastating" to defendant because it was introduced to establish a key element of the crime, *i.e.*, that the confiscated substance was marijuana, a controlled substance. The crime laboratory report also provided evidence from which the trier of fact could conclude that the material tested and found to be marijuana was the material that Terry purchased for Smith.

The criminalist who conducted the analysis was involved in law enforcement; the criminalist was employed by the state crime detection laboratory, a government agency, which has clearly-defined law enforcement responsibilities. The crime laboratory report was prepared, therefore, by a law enforcement officer in the performance of an adversarial function.[14] The crime laboratory report is a direct result of a

---

[14] The criminalists at the state police crime detection laboratory are, without question, important participants in the prosecutorial effort. As well as analyzing substances to determine whether they are contraband, the criminalists testify, when

test made for the specific purpose of convicting defendant; it was conducted by agents of the executive branch, the very department of government that seeks defendant's conviction. The admission of that report as part of the state's *prima facie* case, without the declarant's appearing personally, resulted in the wholesale denial of defendant's right to cross-examine the criminalist who conducted the analysis in challenging the sufficiency of the state's *prima facie* case. The admission of the crime laboratory report denied defendant the opportunity to question the criminalist concerning not only its contents, but also the circumstances surrounding its preparation. It is improper to assume that because the results of the tests are written and are certified, the utility of trial confrontation was remote, for "the tests may be performed well or badly; the risk of error may be great or small; the steps in the test may be complex or simple; the [criminalist] may be careful or careless, honest or corrupt. Without the possibility of cross-examining a live witness, the defense loses its only real chance to explore critical points." Mueller & Kirkpatrick, Evidence Under the Rules, Text, Cases, and Problems: Teacher's Manual 173 (2d ed 1993) (statement made in different but related context).

For the foregoing reasons, the admission of the crime laboratory report over defendant's state Confrontation Clause objections was, in my view, error. The error was harmful, prejudicial error because it was likely to have affected the verdict. *See State v. Johnson*, 313 Or 189, 201, 832 P2d 443 (1992) (applying standard for determining whether evidential or constitutional error is harmless). Accordingly, I would reverse the decision of the Court of Appeals and the judgment of the circuit court and remand the case to the circuit court for a new trial. Because I find that defendant's state Confrontation Clause rights were violated, I need not and do not address defendant's claim that admission of the crime laboratory report violated his Confrontation

---

called, as important prosecution witnesses at trial. *Cf State v. Smith*, 66 Or App 703, 706-08 & 707-08 n 4, 675 P2d 510 (1984) (public records of routine ministerial and nonadversarial observations satisfies the public records and reports exception to hearsay rule in OEC 803(8); contrasting certificate of breathalyzer inspection prepared by law enforcement personnel with adversarial observations in a written laboratory report prepared by United States Customs chemist who had tested white powder and found it to be heroin in preparation for a specific criminal case in *United States v. Oates*, 560 F2d 45 (2d Cir 1977)).

Clause rights under the Sixth amendment to the Constitution of the United States.[15]

In sum, the majority subordinates defendant's Confrontation Clause rights to considerations of prosecutorial efficiency. In so doing, the majority sanctions the evil that the right to confrontation was intended to prevent, *i.e.*, trial by *ex parte* affidavits — without the affiant (here, the criminalist who conducted the analysis) ever being produced by the prosecution at trial. The majority sanctions this evil without any showing by the prosecution of necessity ("unavailability" of the criminalist). Moreover, the "burden-shifting," "small procedural step" imposed by the majority as a precondition to the exercise of defendant's right of confrontation is inconsistent with the presumption of innocence and the prosecution's burden to prove guilt beyond a reasonable doubt. As stated by Justice Linde in *State v. Burrow, supra*, 293 Or at 714 (Linde, J., dissenting):

> "The 'presumption of innocence' and the prosecution's burden to prove guilt beyond a reasonable doubt rank high among those distinctions that are commonly boasted to place our system of justice above those of supposedly less enlightened nations, including some in which a defendant perhaps may be haled before a court, confronted with some modicum of incriminating evidence, and invited to persuade the tribunal that he has not committed a crime. Under the view adopted by the majority in this case, if carried to its logical conclusion, those boasts can be relegated to Law Day editorials and the popular misconceptions of television crime programs."

---

[15] The Sixth Amendment to the Constitution of the United States provides:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]"

"[T]he Sixth Amendment's right of an accused to confront the witnesses against him is * * * a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 US 400, 403, 85 S Ct 1065, 13 L Ed 2d 923 (1965). By its terms, the guarantee that the accused shall enjoy the right to "be confronted with," rather than simply to confront, suggests that someone else (*i.e.*, the state) is making the presentation.

The United States Supreme Court has modified its approach to Confrontation Clause issues since its statement of the two-prong approach for Confrontation Clause analysis in *Ohio v. Roberts, supra*, that this court adopted. *White v. Illinois*, ____ US ____, 112 S Ct 736, 747, 116 L Ed 2d 848 (1992); *Bourjaily v. United States*, 483 US 171, 107 S Ct 2775, 97 L Ed 2d 144 (1987); *United States v. Inadi*, 475 US 387, 106 S Ct 1121, 89 L Ed 2d 390 (1986).

The appropriate role of this court, as final arbiter of the Oregon Constitution, should be to guard the individual rights guaranteed by Oregon's Bill of Rights from state encroachment, not to facilitate encroachment of those rights or to lessen a burden placed on the prosecution by those constitutional guarantees. Unfortunately, in this case the majority accomplishes the latter by abdicating its role as protector.

"Sir Walter Raleigh Loses Another One."[16]

I respectfully dissent.

Carson, C. J., and Fadeley, J., join in this opinion.

---

[16] This quotation comes from the title in Graham, *The Right of Confrontation and the Hearsay Rule: Sir Walter Raleigh Loses Another One*, 8 Crim L Bull 99, 100-01 (1972), which describes the trial of Sir Walter Raleigh. Raleigh was charged with high treason. The Crown's primary evidence against Raleigh was a confession by an alleged coconspirator, obtained at a proceeding at which Raleigh was neither present nor represented by counsel. Even though the confession was repudiated before trial and probably had been obtained by torture, it was used against Raleigh at trial, in spite of Raleigh's demand to confront the alleged coconspirator. Raleigh was convicted and remained imprisoned for 15 years until 1618 when he was executed by the Crown. Pollitt, *The Right of Confrontation: Its History and Modern Dress*, 8 J Pub L 381, 388-89 (1959).