368 So.2d 1086 (1979)
STATE of Louisiana, Appellee,
v.
Norman SPOONER, Appellant.
No. 63185.
Supreme Court of Louisiana.
March 5, 1979.
Andrew Jack Bennett, Jr., Bennett & McLaughlin, A Law Corporation, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., John W. Sinquefield, Mary V. Gilliland, Asst. Dist. Attys., for plaintiff-appellee.
BLANCHE, Justice.[*]
Defendant, Norman Spooner, was convicted of first degree murder, in violation of R.S. 14:30, and was sentenced to life at hard labor, to be served without benefit of parole, probation or suspension of sentence for twenty years.
Defendant made twelve assignments of error and appeals based upon two of them, numbers six and eight:
ASSIGNMENT OF ERROR NUMBER SIX: the court below erred in admitting *1087 only the first page or cover letter of the copy of the defendant's medical record from East Louisiana State Hospital at Jackson, Louisiana.

ASSIGNMENT OF ERROR NUMBER EIGHT: the court below erred in admitting defendant's confession(s) to police officers without placing the burden on the State to show that the defendant was sane and competent to confess at the time his inculpatory statements were made.
Defendant was charged by indictment of February 24, 1975, with the first degree murder of Linda Knippers. Miss Knippers lived on East Boulevard in Baton Rouge; she disappeared some time during the evening of Tuesday, November 13, 1973. She was last seen at about 7:15 p. m. when she visited with her roommate, DeWanna Walls, at Miss Walls' place of employment.
At 7:45 a. m. on November 15, 1973, the police were notified that a body had been found covered with a board in a drainage ditch behind the Lutheran cemetery and in a wooded area around the "ball park" of McKinley Junior High School, near the railroad tracks. In the ditch between the ball park and the tracks there was a wooden door which covered the body. A blue and white Torino was found in the area at the back of the cemetery. Time of death was placed at between 1:00 a. m. and 6:00 a. m. of November 14, 1973.
In December of 1974, Norman Spooner was arrested in Baton Rouge on a burglary charge. Also in December, Denver Jackson was arrested on a charge of auto theft. Both were held in the parish jail. Jackson told two police officers that he knew Spooner had murdered Miss Knippers,[1] and the officers, Robert Gill and Ronnie Alford, questioned Spooner three or four times. (One officer said three, one said four.) On two occasions, December 11 and December 19, 1974, Spooner signed a waiver of rights form and made inculpatory statements. On a third occasion, December 20, he refused to sign a waiver of rights form and made a statement which in some respects contradicted his prior statements. The officers indicated that on all occasions he asked to see Dr. Landry, the Coroner of East Baton Rouge Parish, because his head was all "messed up." On December 11, Spooner was confronted with Jackson while the officers were questioning him. There is some cloudiness in the testimony as to the confessions, since Spooner did not make a very clear or fully detailed statement; no complete written or taped statement was taken, there were only the notes which the officers made at the time. According to the officers, Spooner said that he had been watching Miss Knippers for a while, had stolen a blue car on the day of her disappearance, seen her go back and forth from her car to her apartment, forced her to enter his car, taken her to the cemetery, forced her out of the car, then, when she struggled with him, screamed, and threatened to go to the police, he beat her, dragged her to the ditch, and left her body there, covered with a door. Defendant's statement to the police did not include a reference to strangling the woman, he just said he beat her. There was no medical testimony showing that Miss Knippers had been beaten. The evidence in the record also shows that the car which was found in the cemetery was stolen, but had been stolen on November 14, 1973, the day after Miss Knippers had been reported missing.
There is in evidence the testimony of Denver Jackson, which is contradicted in part by the prior statement which Jackson made to Edward James, an investigator with the Office of the Public Defender.
Spooner was taken to see Dr. Landry on December 19, 1974, at which time Dr. Landry cautioned the officers not to charge him with murder as Spooner had threatened to commit suicide. The following day, after the officers tried to get Spooner to make a final and more complete confession and were unsuccessful, Spooner was taken to East Louisiana State Hospital where he remained from December 20, 1974, until February *1088 20, 1976, and again from January 31, 1977 (the last admission date mentioned by the Superintendent) until July 29, 1977.
Trial of this matter was held May 22 through May 24, 1978. At trial defendant sought to introduce into evidence the file from the East Louisiana State Hospital which covered the period of his commitment there. He was allowed to introduce only the cover letter, which showed the duration of the commitment; he was not permitted to produce the file which would contain any observations of his condition at the time of admission or the diagnosis which was made, though there is in the record of this case prior to trial a series of psychiatric evaluations showing that the defendant was a borderline mental retardate suffering from schizophrenia, paranoid type, that prior to his arrest in December of 1974 he had been hospitalized at Mandeville, and that this time of the arrest was a brief period between hospitalization at Mandeville and hospitalization at Jackson.
Defendant claims that the refusal of the court below to consider the hospital records was error, as the records would show that he was not mentally competent at the time he made the inculpatory statements introduced at the trial. Inclusion of the records in evidence might show that the State would have the burden of proving that defendant was competent to give a credible inculpatory statement.
The State argues that the exclusion of the records was proper, that the exception to the hearsay rule which is established by R.S. 13:3714 should be very narrowly interpreted, so that only the "administrator or the medical records librarian of the hospital in question" would be the ones who could certify any records so as to qualify them for admission in evidence. Because the records herein were certified by the "Superintendent" of the East Louisiana State Hospital, the State argues they are inadmissible.
That hearsay evidence may not be admitted is a fundamental rule. R.S. 15:434. However, R.S. 13:3714, as revised in 1977, establishes one of the limited exceptions to the hearsay rule. The question for our consideration is whether a "Superintendent" is an "administrator" for the purpose of this exception.
Courts of this state may take judicial notice of the state statutes. R.S. 15:422. It is noted that the legislature has enacted statutes dealing with the establishment of the various state hospitals and the duties of those charged with operating them. See generally R.S. Title 28 and R.S. 40:2001, et seq.; for more particular examples see R.S. 28:2(14) and R.S. 40:2013.3. It is clear that the person denominated "Superintendent" by the acts of the legislature is the one who is the "administrator," and we so hold. The general term "administrator" is not to be limited to one who is given that title, but is to be read as applying to those who in fact fulfill the functions of an administrator.
The court below erred in excluding the record which the East Louisiana State Hospital certified through its Superintendent. In this case, this error was not harmless error.
Accordingly, we reverse the defendant's conviction and sentence and remand for a new trial. In connection with the admissibility issue, the trial court will have to consider as evidence the entire hospital record in determining whether the State's burden of proving beyond a reasonable doubt the free and voluntary nature of defendant's inculpatory statements has been met. We call to the court's attention our opinion in State v. Glover, 343 So.2d 118 (La.1977), which clearly recognizes that when mental illness is at issue, the State bears the burden of proving that the extent of any mental disease or defect was not such that it would prevent the giving of voluntary statements. Should the trial court determine the statements are admissible, the defendant would then have the opportunity to present to the jury the hospital records which it could consider in deciding the weight to be accorded the statements.
For these reasons, the conviction and sentence of the defendant are reversed and his *1089 case remanded to the district court for a new trial in accordance with law.
CONVICTION AND SENTENCE REVERSED AND CASE REMANDED.
SUMMERS, C. J., dissents.
NOTES
[*] Judge Cecil C. Cutrer, Louisiana Court of Appeal, Second Circuit, participated in this decision as an Associate Justice Ad Hoc.
[1] The police never stated the details of what Jackson told them, but at trial Jackson testified that Spooner told him he had killed Miss Knippers and showed him her body.