# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-1001

**STATE IN THE INTEREST OF C.D.**

************

**APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 06-085J
HONORABLE LEO BOOTHE, DISTRICT JUDGE**
************

**JAMES T. GENOVESE
JUDGE**

************

Court composed Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and James T. Genovese, Judges.

**ADJUDICATION VACATED AND
MATTER REMANDED.**

**Samuel H. Thomas
Post Office Box 814
209 North Walnut Street
Tallulah, Louisiana 71282
(318) 574-1953
COUNSEL FOR DEFENDANT/APPELLANT:**
    C.D.

**John F. Johnson**
**District Attorney - Seventh Judicial District**
**ADA Bradley R. Burget**
**4001 Carter Street, Suite 9**
**Vidalia, Louisiana 71373**
**(318) 336-5526**
**COUNSEL FOR APPELLEE:**
  **State of Louisiana**

**GENOVESE, JUDGE.**

In this juvenile delinquency case, the juvenile Defendant, C.D.,[1] was adjudicated a delinquent child pursuant to an adjudication hearing on the offense of oral sexual battery. At the dispositional hearing, the trial court committed C.D. to the custody of the Louisiana Department of Public Safety and Corrections, Office of Youth Development (OYD), for a period of four years. C.D. appeals his delinquency adjudication. For the following reasons, we reverse and vacate the delinquency adjudication and disposition.

## FACTS AND PROCEDURAL HISTORY

In October of 2006, the juvenile (C.D.), then sixteen years of age, was living with his grandmother, L.D., in Ferriday, Louisiana. On October 18, 2006, two other grandchildren, T.D., twelve years of age, and Z.D., four years of age, were visiting their grandmother at her home while their parents were attending a high school football game.

On October 21, 2006, Z.D. informed her eight-year-old brother, D.D., that C.D. had placed his penis in her mouth on the previous Friday, October 18, 2006, while she was at her grandmother's house. Z.D. then informed her mother, M.D., who contacted other family members and the police. A juvenile delinquency petition was filed, alleging that C.D. had committed oral sexual battery upon Z.D. An adjudication hearing was conducted by the trial court, and C.D. was adjudicated a delinquent and committed to OYD for four years. C.D. appeals his delinquency adjudication, alleging two assignments of error.

---

[1] All initials used throughout this opinion are used in accordance with La.R.S. 46:1844(W).

## ASSIGNMENTS OF ERROR

In his brief to this court, C.D. presents the following two assignments of error:

1. The trial court erred when the court allowed the state to call [a] witness after the defendant requested [that] all witnesses be sequestered.

2. The trial court erred when the court allowed the state to introduce doctors [sic] and medical records denying defendant the right to cross examination.

## ERRORS PATENT

Although the Louisiana Children's Code is silent as to whether a juvenile criminal proceeding warrants an error patent review, this court has found that such a review is mandated by La.Ch.Code art. 104 and La.Code Crim.P. art. 920. *See State in the Interest of J.C.G.*, 97-1044 (La.App. 3 Cir. 2/4/98), 706 So.2d 1081. After conducting an error patent review, we find that there is one error patent relative to post conviction relief; however, based on our decision herein, we need not address said error patent.

## ASSIGNMENT OF ERROR NO. 2:

Because of its effect on Defendant's first assignment of error, we will first address Defendant's second assignment of error. In his second assignment of error, Defendant argues that the trial court erred by allowing the State to introduce uncertified medical records of the treatment a doctor provided to a two-year-old minor, K.E. K.E. is an alleged victim of a separate crime in a separate case allegedly perpetrated by this Defendant. Though subpoenaed, the doctor in question, Dr. Danita Weary, was not present at the adjudication hearing, and, consequently, Defendant was unable to cross-examine her. Defendant concedes that Dr. Weary was "unavailable as a witness"; however, we note that Dr. Weary's office is located in

Natchez, Mississippi and that she refused to honor her subpoena and testify. There is nothing in the record establishing the fact that Dr. Weary was a domiciliary of the state of Louisiana and thereby subject to the subpoena power of the state of Louisiana. The medical records in question contain statements by K.E. to the doctor, which the State contends are admissible.

At trial, the following colloquy occurred:

**MR. THOMAS:**

Your Honor, note my objection. I don't see where these records are certified and I don't have the right to cross-examine them.

**MR. BURGET:**

Your Honor, actually these records are certified per a letter from -- let me back up. These are medical records wherein Ms. [D.] took the child, [K.E.], to the doctor; she just testified to that [sic] Dr. Weary's office. I have a letter of certification from the business manager who is the regular custodian of those records at the Natchez Pediatric Clinic over in Natchez, Mississippi. A person by the name of Monty Mayo and also a one page, these records are just one page long. I'll show you those.

**MR. THOMAS:**

Your Honor, a letter is not certification. Certification means that it's been certified by a notary that those are records from the hospital and that's not what we have. We just have a letter. I believe the Code clearly states that if you're going to introduce evidence where I don't have a right to cross-examine and they are records that it should be certified. A mere statement from somebody that it's a record is not a certification.

**THE COURT:**

Well, we have a statement from the business manager of the Natchez Pediatric Clinic that this, that they're certifying the medical records of [K.E.], . . . . They're a copy of the records from the Natchez Pediatric Clinic, Dr. Danita Weary. I'm going to accept them as being certified based on this letter.

**MR. BURGET:**

Your Honor, for the record, what the exception that you're trying to get over in the introduction of medical records is the hearsay exception.

3

**THE COURT:**

Right.

**MR. BURGET:**

Of course, these are business records. They don't have to be certified by a notary, but certified as the Court has properly turned out, by a person, the regular keeper of those records and that's in 803(7), excuse me, yeah 803(7). Also in the matter, I subpoenaed Dr. Weary. She is unable to be with us today, therefore, she is unavailable and these records come in through an exception to the hearsay statute as well under 804. Further than that, the Legislature is kind of redundant in 803 when they define hearsay, they talk about consistent with the declarant's testimony and is one of the initial complaint of sexual assaultive behavior. Therefore, they're not even hearsay per the definition of what hearsay is under 801. I just want to make that clarified for the record.

**THE COURT:**

Let it be noted for the record. My ruling's been issued.

**MR. THOMAS:**

Note my objection, your Honor.

**THE COURT:**

Note Mr. Thomas' objection.

The controlling statute is La.R.S. 13:3714(A),[2] which states:

> Whenever a certified copy of the chart or record of any hospital, signed by the administrator or the medical records librarian of the hospital in question, or a copy of a bill for services rendered, medical narrative, chart, or record of any other state health care provider, as defined by R.S. 40:1299.39(A)(1) and any other health care provider as defined in R.S. 40:1299.41(A)(1), certified or attested to by the state health care provider or the private health care provider, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the bills, medical narrative, chart, or record is sought to be used may summon and examine those making the original of the bills, medical narrative, chart, or record as witnesses under cross-examination.

---

[2]We find this statute applies to juvenile proceedings, pursuant to La.Ch.Code arts. 104 and 105.

The supreme court has explained as follows:

> The purpose of the statute is to save a litigant the difficulty and expense of producing as a witness each person who assisted in the treatment of the patient. *Judd v. State, Dept. of Transportation and Development*, 95-1052, p. 3 (La.11/27/95), 663 So.2d 690, 693. It provides that the opposing party may defend against the record by calling those who made the record as witnesses under cross-examination. *Id.*

*State v. Juniors*, 03-2425, p. 42 (La. 6/29/05), 915 So.2d 291, 324, *cert. denied*, 547 U.S. 1115, 126 S.Ct. 1940 (2006).

It is, at the very least, questionable whether the certification by the business manager of the clinic complies with La.R.S. 13:3714. The statute clearly differentiates between hospital records and those of other health care providers. Since this provision acts as an exception to normal hearsay rules, the jurisprudence states that it should be read strictly. *State v. Trahan*, 332 So.2d 218 (La.1976).

In *State v. Miller*, 06-595 (La.App. 3 Cir. 9/27/06), 940 So.2d 864, *writ denied*, 06-2577 (La. 5/11/07), 955 So.2d 1278, this court analyzed a defendant's argument that the lower court erred by accepting into evidence medical records from the LSU hospital in Shreveport. The defendant alleged that the records were not properly certified by a librarian as required by La.R.S. 13:3715, a sister-statute to La.R.S. 13:3714. Discussing *Trahan*, and a subsequent decision of the supreme court, *State v. Spooner*, 368 So.2d 1086 (La.1979), this court, in *Miller*, explained:

> The *Spooner* court's conclusion that a "superintendent" and an "administrator" accord with the common understanding of those terms. Our survey of current statutes has not revealed a clear statutory correlation between the terms "librarian" and "health information manager." However, at trial Dr. Conrad, the attending physician, testified that at LSU Health Sciences Center the librarian for medical records holds the title "Director of Health Information Management." Defendant indicated he would cross-examine the doctor on this point, but did not do so.
>
> As the *Spooner* court correlated the terms "administrator" and "superintendent" based upon a review of the statutes, we find, based

upon Dr. Conrad's testimony, that a "health information manager" or "director of health information management" is a librarian, for purposes of La.R.S. 13:3715. The strict reading advocated by Defendant would place any number of legitimate, authentic medical records beyond the parameters of the statute. Under his interpretation, whenever a medical facility used a term other than "librarian" for its custodian of records, neither La.R.S. 13:3714 nor 13:3715 would apply. *Spooner* shows this would not be a proper result. *Trahan* has never been overruled, and its call for procedural caution in applying La.R.S. 13:3714 is sound. However, *Spooner* tempers *Trahan*, by demonstrating that the application of the statute is not limited to the exact job titles that appear in its language. Further, the same reasoning would apply to both La.R.S. 13:3714 and 13:3715.

*Id.* at 872-73.

*Miller* and *Spooner* merely recognized a reality of modern business practice in that a person who functions as a superintendent or librarian may have a job title other than "superintendent" or "librarian." In the present case, it is likewise questionable whether the record-keeper for a clinic can validly certify records. The statute, La.R.S. 13:3714, differentiates between medical records kept by hospitals and those kept by other health care providers. Nonetheless, we note that in *Trueman v. City of Alexandria*, 01-1130 (La.App. 3 Cir. 5/15/02), 818 So.2d 1021, *writ granted*, 02-2166 (La. 11/15/02), 829 So.2d 410, in discussing the medical records rule, this court appeared to treat a clinic's records as hospital records for purposes of the statute. Another civil case, *Brasseaux v. Stand-By Corp.*, 402 So.2d 140 (La.App. 1 Cir.), *writ denied*, 409 So.2d 617 (La.1981), also treated clinic records as hospital records under La.R.S. 13:3714, without specifically discussing the issue.

Even assuming arguendo that these medical records in question were duly certified, the statute requires that the opposing party have an opportunity to call and cross-examine the person who made the record. In the colloquy cited above, Defendant complained that he had not had the opportunity to cross-examine anyone regarding the records. Although the State had subpoenaed Dr. Weary, she did not

appear. Moreover, it is questionable as to whether the State could even enforce its subpoena of Dr. Weary due to the doctor's apparent domiciliary status in the state of Mississippi. We observe that La.R.S. 13:3714 gave Defendant an opportunity to subpoena Dr. Weary himself, but that is meaningless if the state of Louisiana does not have the jurisdiction to enforce such a subpoena on an apparent out-of-state witness.

We also note the following supreme court's detailed discussion on the same issue in an analogous case:

> This court is called upon to determine the propriety of the judgment of the trial court appellate division holding LSA-R.S. 15:499-501 unconstitutional. At issue is whether the statutes in question, which allow a certificate of analysis to be accepted by the trial court as prima facie proof of the substance tested without live testimony of the person performing the analysis, deprive the defendant of the right to confront and cross-examine the witness and impermissibly shift the burden of proof to the defendant.

> The State contends that the statutes in question neither violate the Confrontation Clause of the state or federal constitutions nor impermissibly shift the burden of proof to the defendant. The State argues the challenged statutes provide very specific procedures to be followed in order to introduce reports or "certificates of analysis" from criminalistics laboratories. As such, the statutes protect the defendant's right to confront the authors of certificates of analysis and do not shift the burden of proof to the defendant.

> The defendant argues the statutes violate both the United States Constitution and the Louisiana Constitution. A criminal defendant is guaranteed the right to confront and cross-examine witnesses against him. Defendant argues the case of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), bars the use at trial of testimonial out-of-court statements unless the witness is unavailable and defendant had an opportunity to cross-examine that witness. Defendant contends certificates of scientific analysis are testimonial scientific testimony which are not immune to the *Crawford* analysis.

> . . . .

> In enacting the above statutes, the legislature sought to establish a procedure to relieve the party desiring to introduce a certificate of the burden of having to produce the person who performed tests on the evidence. *State v. Davis*, 438 So.2d 1288, 1290 (La.App. 3 Cir. 1983), *writ denied*, 445 So.2d 455 (1984). This procedure allows a party to submit a document in place of a witness's direct examination and

requires a court to accept such a document as prima facie proof of the facts shown and of proper custody of the physical evidence, provided the certificate is in accordance with LSA-R.S. 15:499 and subject to the conditions contained in LSA-R.S. 15:500-501. *See* LSA-R.S. 15:500. If, at least five days prior to commencement of the trial, the party against whom such certificate is offered requests a subpoena be issued to the person who performed the examination or the person subpoenaed responds to the subpoena, the certificate shall not be prima facie proof of its contents or of proper custody. LSA-R.S 14:501(B)(1). Prima facie evidence is defined in BLACK'S LAW DICTIONARY, 579 (7th ed.1999), as "[e]vidence that will establish a fact or sustain a judgment unless contradictory evidence is produced." Prima facie evidence is not conclusive proof. Thus, even if admitted, the defendant can attack the certificate of analysis. *See* LSA-C.E. art. 806.

. . . .

In *State v. Powdrill*, 95-2307, pp. 11-12 (La.11/25/96), 684 So.2d 350, 358, this court had the opportunity to address a defendant's right of confrontation as affected by a portion of the state securities law, LSA-R.S. 51:721(B), a statute similar in effect to the procedure set forth in LSA-R.S. 15:499-501. The trial court reasoned the introduction into evidence of a certificate of non-compliance would deny defendants their right to confront the commissioner about the finding. Consequently, the trial court found the statute unconstitutional.

This court reversed, noting the subsection in question can be utilized by either party. Further, the statute does not preclude the defense from calling the commissioner as a witness and cross-examining him because defendant is entitled to subpoena the commissioner to question him about the preparation of the certificate and the information on which it is based. . . .

. . . .

In *State v. Matthews*, 632 So.2d 294, (La.App. 1 Cir. 1993), defendant asserted that LSA-R.S. 15:499-501 were unconstitutional because the statutes shift the burden of proof from the State to the defendant. The court noted defendant had not requested a subpoena issue to the person performing the tests to appear at trial. The statute provides that if the subpoena is requested at least five days prior to commencement of the trial or the person subpoenaed responds, the certificate shall not be prima facie proof of its contents or of proper custody. The court did not find "the requirement that defendant request the preparer of the certificate to testify is tantamount to requiring the defendant to put on the proof [. The] requirement is not an onerous burden that deprives defendant of any constitutional rights." *State v. Matthews*, 632 So.2d at 301.

In *State v. Landry*, 583 So.2d 911 (La.App. 1 Cir. 1991), the defendant had timely requested issuance of the subpoena. During the trial, the State offered the report of the criminalistics laboratory into evidence over defendant's objection. The State argued that although he had timely requested the subpoena, defendant waived his rights by not objecting until the State sought to introduce the report rather than prior to commencement of the trial. Defendant argued his constitutional rights of confrontation and cross-examination were denied. The appellate court agreed, relying on the language of LSA-R.S. 15:501(B) and the holding in *City of Shreveport v. Burroughs*, 511 So.2d 782, (La.App. 2 Cir. 1987), and reversed defendant's conviction and sentence for distribution of ecstasy. The court quoted from *City of Shreveport v. Burroughs*:

> When the defendant subpoenas the person who made the certificate more than five days prior to trial, the state is made aware that the certificate will not be admissible into evidence in lieu of the testimony of the person who made the certificate, and it is incumbent upon the state to procure the attendance of the person who made the certificate at trial and to offer his or her testimony to establish the results of the examination as proof of an element of the offense charged. It is the state's burden, not the defendant's, to go forward with proof of the elements of the crime and there is no reason why the defendant should ask for continuance when the subpoenaed witness fails to appear at trial.

*City of Shreveport v. Burroughs*, 511 So.2d at 783.

The court in *State v. Mims*, [524 So.2d 526 (La.App. 2 Cir.), *writ denied*, 531 So.2d 267 (La.1988)], addressed defendant's objection to the admission of the crime laboratory's certificate claiming improper notice, improper form, and failure to comply with LSA-R.S. 15:499. The court found notice had been properly given of the State's intent to introduce the certificate prior to the first trial which ended in a mistrial. The court concluded there was no requirement that the State send a renewal of the notice. In doing so, the court found the "purpose of the statute is to inform defendant that such a certificate exists and that it will be used against him. It prevents confusion or surprise, and it aids defendant in preparing an adequate defense." *State v. Mims*, 524 So.2d at 536.

In this case defendant relies on the recent ruling by the United States Supreme Court in *Crawford*, *supra*. . . .

In *Crawford*, the Supreme Court held out-of-court statements by witnesses that are testimonial are barred under the Confrontation Clause unless the witnesses are unavailable and the defendant had prior opportunity to cross-examine the witnesses, regardless of whether such statements are deemed reliable by the court. In *Crawford*, the lower court allowed the use of a spouse's recorded statement to be used in lieu of live testimony because the defendant invoked the marital privilege.

The Supreme Court granted certiorari to determine whether the State's use of the spouse's statement violated the Confrontation Clause.

. . . .

Upon careful review of the *Crawford* opinion, we find that *Crawford* is not controlling, believing the statutes at issue provide a party with notice that a certificate of analysis will be offered into evidence absent an objection. These statutes are a formalized means of effectuating a stipulation to the admissibility of matters which often are not in dispute. *See State v. Hancock*, 317 Or. 5, 854 P.2d 926, 929 (7/1/93), where the court indicated a defendant is advised the State will allow the defendant to select the manner in which the State must prove the nature of the controlled substance. After the State has put the defendant on notice, the statute provides the defendant with a small procedural step which must be taken to exercise the right to confrontation. In essence, it is the defendant's decision which dictates whether the State must produce the individual who prepared the report or whether the defendant will agree to use of the criminalist's report. The court analogized this evidence to other kinds of hearsay evidence which are admissible and raise no constitutional problems if the defendant does not object or if the defendant stipulates to admissibility. The report does not come into evidence if a subpoena is issued for the appearance of the criminalist. This construction protects the defendant's rights of confrontation and avoids confrontation problems. *Id*.

Although there is no statistical data available before this court as to the number of cases that would be involved in Louisiana, we note the Oregon Supreme Court in considering a similar statute reported "the Oregon Crime Laboratory received approximately 8,800 subpoenas, but criminalists actually testified in only 10 percent of the cases." *State v. Hancock*, 854 P.2d at 929. In *Hancock*, the defendant claimed the statute violated the state and federal Confrontation Clauses. The Oregon Supreme Court thoroughly examined the statute and found it provided a "'reasonable procedure' that must be followed in order for a defendant to exercise a constitutional right--in this case, the confrontation right." *State v. Hancock*, 854 P.2d at 928. All a defendant had to do to compel the State to prove its case through live testimony was to put the State on notice by subpoenaing the criminalist. The court found the procedure of having the defendant subpoena the criminalist was neither unreasonable nor unfair. *State v. Hancock*, 854 P.2d at 930. Thus, the court affirmed the lower court rulings that the statute did not violate a defendant's constitutional right of confrontation by providing a means for the defendant to subpoena the criminalist.

It has long been recognized that a defendant may voluntarily waive the right to confront when the situation proves advantageous. *Diaz v. United States*, 223 U.S. 442, 450, 32 S.Ct. 250, 252, 56 L.Ed. 500 (1912).

In another case concerning a so-called "notice and demand" statute, similar to LSA-R.S. 15:499-501, that provides a procedure whereby a laboratory certificate may be admitted into evidence without the presence of the laboratory employee, the New Jersey Supreme Court determined that it did not violate a defendant's right to confrontation to require the defendant to request the presence of the person who prepared the laboratory report within a given time frame. *State v. Miller*, 170 N.J. 417, 790 A.2d 144 (1/23/02). In *Miller*, the State notified defense counsel of its intent to proffer the laboratory certificate at trial pursuant to New Jersey's statute. The defendant timely objected; however, the State never received notice of the objection. Under the New Jersey statute, once an objection is filed, admissibility of the certificate shall be determined no later than two days before trial. Failure to comply with the time limitations regarding notice of objection shall constitute a waiver to admission of the certificate. In *Miller*, there was no hearing prior to trial. The trial court admitted the certificate over defendant's objection. The appellate court affirmed. The New Jersey Supreme Court granted certification limited to the issue of the trial court's admission of the laboratory certificate into evidence. The court, citing *Maryland v. Craig*, 497 U.S. 836, 845, 110 S.Ct. 3157, 3163, 111 L.Ed.2d 666, 678 (1990), noted "'[t]he central concern of the Confrontation Clause is to ensure reliability of the evidence against a criminal defendant by subjecting it to rigorous testing' in an adversarial proceeding." *State v. Miller*, 170 N.J. at 425, 790 A.2d 144.

Following a thorough analysis, the New Jersey Supreme Court found the statute "require[d] only that a defendant object to the lab certificate and assert that the composition, quality, or quantity of the tested substance will be contested at trial." *State v. Miller*, 170 N.J. at 436, 790 A.2d 144. The matter was remanded to the trial court for a hearing at which the State would bear the burden of proving the reliability of the scientific methodology underlying the report. *State v. Miller*, 170 N.J. at 438, 790 A.2d 144.

We acknowledge that other courts have evaluated similar statutes with varying degrees of skepticism depending on the manner in which the statutes were written. *See City of Las Vegas v. Walsh*, 120 Nev. 392, 91 P.3d 591 (6/11/04); *People v. McClanahan*, 191 Ill.2d 127, 246 Ill.Dec. 97, 729 N.E.2d 470 (4/20/2000); *Miller v. State*, 266 Ga. 850, 472 S.E.2d 74 (7/1/96); *Barnette v. State*, 481 So.2d 788 (Miss.1985); *State v. Christianson*, 404 A.2d 999 (Me.1979).

. . . .

From a practical standpoint, these statutes are no different from a situation in which the State offers hearsay evidence at trial. If defendant does not contemporaneously object, the hearsay is allowed into evidence. In *State v. Hancock*, 854 P.2d 928, the Oregon Supreme Court found the statute provided a "reasonable procedure" which must be followed for the defendant to exercise a constitutional right to confrontation. That

finding was premised on the principle that it is permissible to establish reasonable procedures to be followed in order to exercise a right guaranteed by the constitution. *Poulos v. New Hampshire*, 345 U.S. 395, 405, 73 S.Ct. 760, 766, 97 L.Ed. 1105 (1953).

*State v. Cunningham*, 04-2200, pp. 4-18 (La. 6/13/05), 903 So.2d 1110, 1113-21 (footnotes omitted).

The reasoning of *Cunningham* suggests that pursuant to La.R.S. 13:3714, Defendant was responsible for summoning Dr. Weary for examination. The State subpoenaed Dr. Weary, who did not appear. However, *Cunningham*'s reasoning indicates that it was Defendant's responsibility to subpoena the doctor, regardless of the State's actions. On the other hand, *Cunningham* also indicates that Defendant should have had notice that the medical records were going to be introduced so that he would know that he needed to subpoena Dr. Weary for examination. There is no indication in the record that Defendant had notice that these medical records were going to be introduced. Therefore, Defendant had no responsibility to subpoena Dr. Weary. Moreover, neither the State nor the Defendant could enforce an apparent out-of-state subpoena. Under the facts of this case, Defendant's statutory and constitutional rights to confrontation were violated. Thus, the court erred by allowing the medical records to be admitted into evidence.

The State also argued at trial that the "business records exception" to the hearsay rules and the "initial complaint" (of sexual assault) exception applied. The State repeats these arguments in its brief on appeal. The trial court did not rule on the State's arguments, and we find that the record does not establish that either exception would apply. The "business records exception" requires live testimony from the records custodian or other qualified witness to lay a foundation for admissibility. La.Code Evid. art. 803(6). There was no such testimony in this case; likewise, there was no opportunity for cross examination. As for the "initial complaint" exception,

12

the record does not establish that the information in the medical records was derived from the *initial* complaint, nor does it establish that the declarant was unavailable. Therefore, La.Code Evid. art. 804(A) and 804(B)(5) are inapplicable.

On appeal, the State also argues that La.Code Evid. art. 803(4) codifies a "medical records" exception to the hearsay rule. However, the Louisiana Supreme Court has indicated that La.Code Evid. art. 803(4) applies to statements *made for the purpose of medical treatment*, while admissibility of medical *records* is governed by La.R.S. 13:3714. *See Juniors*, 915 So.2d 291.[3]

We find that the trial court erred in admitting the medical records of Dr. Weary's treatment of K.E. This was not harmless error. An error is harmless if the verdict actually rendered in this case "was surely unattributable to the error." *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081 (1993); *State v. Johnson*, 94-1379, p. 14 (La. 11/27/95), 664 So.2d 94, 100.

We find that the adjudication in this juvenile case by the trial court was not "surely unattributable to the error," as K.E.'s medical records provided the only physical evidence in a case contingent upon credibility, and the trial court specifically relied on those medical records in its oral reasons for judgment. In rendering its adjudication, the trial court stated:

**THE COURT:**

All right. The matter's submitted. As typical in a matter involving witnesses of tender age, things are not totally clear. The Court finds that the -- there's one piece of physical evidence involving the two-year-old. There was some physical evidence that she had suffered injuries to the interior of her vagina [and] that she [w]as in discomfort for a few days.

The Court did not detect any animosity or any reason for these children to make up this story on [C.D.]. The Court finds that the State

---

[3]We note that if La.Code Evid. art. 803(4) functioned as a "medical records exception," then La.R.S. 13:3714 would have no reason to exist. The State mentions statements allegedly made by K.E. to the doctor. The exhibit in the record does not contain any such statements. Further, Defendant's brief does not place such statements at issue.

has carried its burden of proof beyond a reasonable doubt. The Court adjudicates [C.D.] to be guilty in this matter.

Defendant testified and denied committing the offense. His grandmother also testified, stating that she was in the house on the night the offense allegedly took place. She further stated that she saw nothing unusual and that the victim did not report anything to her. However, she acknowledged that from her location in her home that night, she could not see into Defendant's room. There were no eye-witnesses to the incident.

We find the error of the trial court in allowing the medical records into evidence was not harmless error. There was no physical evidence regarding the crime charged; thus, the inadmissible physical evidence of an offense against the witness, K.E., as set forth in the trial court's oral reasons for judgment, affected the trial court's credibility assessment. Therefore, the trial court's delinquency adjudication must be reversed and the matter remanded for a new adjudication hearing.

Having determined that Defendant's second assignment of error has merit and warrants a reversal of the adjudication in this case, we need not address Defendant's first assignment of error or the error patent set forth herein.

## CONCLUSION

We reverse and vacate the trial court's delinquency adjudication and disposition in this juvenile case and remand the case for further proceedings.

**ADJUDICATION VACATED AND MATTER REMANDED.**

14